### Golden Gate Corporation *vs.* Barrington College.

APRIL 15, 1964.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

36

JOSLIN, J. This is a bill in equity brought to enjoin the respondent from (1) instituting or maintaining eviction proceedings to secure the possession of certain premises located on State street in Providence, hereinafter sometimes referred to as the "leased premises," occupied by the complainant under a lease from the respondent, or from interfering with the complainant's possession thereof; and (2) instituting or maintaining any action designed to prevent continued use by the complainant and its employees of certain plumbing, heating and toilet facilities located in Winn Hall, a building of the respondent's adjacent to the building in which the leased premises are located, or from interfering with the continued use of those facilities by the complainant and its employees. The cause was heard in the superior court on bill, answer and proof, and thereafter a decree was entered denying and dismissing the bill, but pursuant to the prayer for affirmative relief contained in the answer required the complainant to vacate, remove its effects from, and surrender the leased premises to the respondent within 90 days. From that decree the complainant has appealed to this court.

On April 23, 1958 by written agreement complainant leased from respondent the leased premises together with certain personal property described therein for a use limited to the operation of a radio broadcasting station at a monthly rental of $200. The initial term was for one year and the lease granted options to complainant to renew or extend the term on a year-to-year basis and to purchase the leased personal property for a sum not in excess of $4,000.

The complainant has occupied the leased premises con-

tinuously since September 1, 1958, the commencement date of the lease. It is not disputed that contemporaneously with the purchase of the personal property by complainant pursuant to the option it was agreed that the monthly rental would be abated, nor is there any firm contention by respondent that the abatement or the purchase of the personal property in and of themselves constituted a termination either of complainant's holding under the lease or of whatever tenancy it might at that time have been enjoying. The reason for the abatement is, however, in dispute, the complainant's version being that it was pursuant to an oral agreement that there would be an adjustment of the rent in the event of the purchase of the personal property. The respondent's account, however, was that the abatement was a purely voluntary act extended as an act of grace. Whichever may be correct, however, is of no significance and we refer to the abatement incident only to give coherence to the factual background of what is essential to our decision. Suffice it to say that the abatement continued for a period of eight months extending from March through October 1961.

During the abatement period respondent communicated with complainant by letter on several occasions suggesting in substance a meeting between the parties for the purpose of discussing terms for a new lease. Receiving neither oral nor written response thereto and the suggested meeting not having taken place, by letter dated October 20, 1961 respondent advised complainant that effective November 1, 1961 its tenancy would be on a "month by month" basis until June 1962 at a rental of $200 per month payable in advance and terminable upon 90 days' notice.

Further terms of the proposed letting as contained in that letter were that respondent would heat the leased premises, remove the trash therefrom and allow complainant the use of toilet facilities in Winn Hall. These undertak-

ings assume significance because the leased premises contained no toilet or plumbing facilities, or any heating equipment and the lease is silent both as to their nonexistence and as to any obligation of respondent to make them available in and from its adjoining premises.

The trial justice, without reference to the kind of tenancy possessed by complainant at the time of its receipt of the letter of October 20, 1961, found that its failure to reply to that letter and the subsequent payment of rental resulted in the creation of a month-to-month tenancy commencing November 1, 1961. He premised that conclusion on an express finding that the letter of October 20, 1961 was an offer to provide heating and toilet facilities which were benefits complainant was not otherwise entitled to receive or respondent obliged to provide, and that the acceptance of those benefits by complainant constituted a manifestation of assent resulting in a new tenancy between the parties.

Aside from the undertaking in the October 20 letter to remove trash to which the trial justice attached no particular significance, his conclusion can be supported only if complainant was not pursuant to a prior or contemporaneous oral agreement entitled to the use and benefit of the facilities in question.

The complainant's president, Harold C. Arcaro, testified that there was such an agreement and that by virtue thereof respondent continuously from the execution of the lease until just prior to the commencement of suit had made toilet facilities accessible in Winn Hall and had provided heat for the leased premises from its heating plant located in that building. Objection was sustained, however, to a question to Mr. Arcaro as to the reason for not incorporating that oral agreement into the lease.

The pertinent evidence for respondent on the plumbing and heating facilities came from its president, Dr. Howard W. Ferrin. He neither admitted nor denied the existence

of any such oral agreement, but on direct examination testified that Winn Hall had been used by respondent for the activities of the college continuously from the commencement of the lease until the summer of 1961 when the transfer of all college activities from Providence to a new location in Barrington was completed. That testimony obviously was intended to create a basis for an inference that respondent without obligation so to do permitted complainant to enjoy the questioned facilities so long as Winn Hall was otherwise being used by it, and that purpose was realized for the trial justice found that the enjoyment of these facilities had been "granted to the complainant on a voluntary basis by the respondent."

On cross-examination the trial justice sustained objections to questions posed to Dr. Ferrin by which it was sought to establish whether an oral agreement as testified to by Mr. Arcaro had been made, and if made whether the failure to refer to the facilities in the lease was occasioned by applicable municipal ordinances, or whether their omission from the writing was due to a desire to prevent disclosure of the nonexistence in the leased premises of any plumbing facilities.

The questions for our determination are whether evidence of the alleged collateral agreement and the surrounding circumstances should have been admitted and whether that agreement, if established, can supplement the written lease.

This court has frequently held that the parol evidence rule makes inadmissible prior understandings or agreements for the purpose of contradicting, altering, adding to or varying the terms of a written contract. *Phillips* v. *Columbus Wholesale Grocery Co.,* 60 R. I. 47. In holding that such rule is not one of evidentiary but of substantive law, *Quinn* v. *Bernat,* 80 R. I. 375, we have in effect recognized that the rule "does not exclude certain data because they are for one or another reason untrustworthy or

undesirable means of evidencing some fact to be proved. * * * What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all * * *." 9 Wigmore, Evidence (3d ed.), §2400(1), p. 3.

That questions concerning the application of this rule have come before us many times is not unique for as Professor Williston has said: "Few subjects connected with the interpretation of contracts present so simple and uniform a statement of principle, bedeviled by such a perplexing and harassing number of difficulties in its application, as the parol evidence rule." 4 Williston, Contracts (3d ed.), §632A, p. 984.

Without attempting a complete enumeration or examination of our decisions in which the rule has been held inapplicable, reference to some instances where parol evidence has been admitted even where that evidence added to, varied, altered or contradicted the terms of a later unambiguous writing, amply demonstrates that the rule is neither all-inclusive nor self-executing. For example, we have held that parol or extrinsic evidence is admissible to show that the actual consideration for a deed is other than as therein set forth, *Del Sesto* v. *Turchetta*, 85 R. I. 474; or to bring out all the circumstances surrounding a transaction, *Amado* v. *Ken-Mac Motors, Inc.*, 83 R. I. 452; or to show the existence of a condition precedent which would prevent a subsequent written instrument from taking effect, *Allen* v. *Marciano*, 79 R. I. 98; or to establish that there was no consideration for a note and that its delivery was conditional, *Lopato* v. *Hayman*, 43 R. I. 271; or to show a different consideration from that stated in a release, *Wood* v. *Moriarty*, 15 R. I. 518; or to show the original invalidity of a negotiable instrument, *Gardner* v. *Gardner*, 45 R. I. 214; or to complete a writing that is incomplete and which it is ap-

parent from an inspection of the writing does not include the entire agreement of the parties, *Myron* v. *Union R.R.*, 19 R. I. 125.

These examples of inapplicability clearly demonstrates that the issue of the admissibility of parol is not susceptible to the simple test of the presence or absence of fraud or mistake or ambiguity.

We come now to the challenged rulings. Objections to the questions were sustained substantially on the ground that a lease unambiguous and complete on its face could not be added to by evidence of prior oral agreements or preliminary negotiations. It is clear that there would have been no error if the parties had completely integrated *all* their agreements in the lease. *Supreme Woodworking Co.* v. *Zuckerberg*, 82 R. I. 247. The questions asked, however, went to that very issue — had all the agreements been merged in an integrated document, or was it only a partially integrated writing?

An integrated document is one "where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." 1 Restatement, Contracts §228, p. 307. How to determine whether the executed document was adopted by the parties as a final and complete expression of their agreement is the difficult problem. That question cannot be answered by an examination of the instrument alone for the writing does not in or of itself prove completeness. 3 Corbin, Contracts §582, p. 448; 9 Wigmore, Evidence (3d ed.), §2400(5), p. 5, §2431, p. 102. Instead in each instance wide latitude must be allowed for inquiry as to whether the parties intended that the writing constitute an integration of all of their prior agreements and negotiations. 1 Restatement, Contracts §228, comment a, p. 308; 3 Corbin, Contracts §§582, 588, pp. 457, 529.

Such intent may be found in the prior or contemporaneous conduct and language of the parties for it is abundantly

clear that the ultimate question of what negotiations and prior agreements were intended to be covered or adopted by the writing cannot be answered without first ascertaining what those negotiations and agreements were and in what circumstances they were undertaken and made. Extrinsic or parol evidence on these subject matters should be admitted preliminarily by the trial justice, and out of hearing of the jury if there be one. If satisfied on the evidence so admitted that there is an issue of fact as to the existence of a prior or contemporaneous oral agreement, the trial justice must then determine whether the collateral terms are consistent with the written and are such as would normally be excluded from the written contract by the parties. If he so finds, then and only then may that evidence be considered by the trier of the facts for his determination of the ultimate question of whether in fact the agreement consisted of what was written as well as what was oral. If on the other hand, what is collateral is inconsistent with the writing or is such that the parties would naturally and normally have included one in the other, then the extrinsic evidence originally admitted preliminarily must be excluded and may not be considered by the trier of facts. *Rinaudo* v. *Bloom,* 209 Md. 1; *Mitchill* v. *Lath,* 247 N. Y. 377; 3 Corbin, Contracts, §583, p. 475; 4 Williston, Contracts (3d ed.), §638, p. 1042; 9 Wigmore, Evidence (3d ed.) §2430(2), p. 98.

Our determination as to when oral testimony of additional terms not expressed in a writing may be admissible is consistent with what has by statute been defined to be the rule, at least as to those writings which fall within the scope of the Uniform Commercial Code, for pursuant to G. L. 1956, §6A-2-202(b), parol or extrinsic evidence of consistent prior agreements is admissible in supplementation or explanation of such instruments unless there has been a preliminary finding by the trial justice that the writing was intended by both parties as a complete and exclusive statement of all the terms or that the additional terms, if agreed

upon, are such as would in the view of the court preliminarily made have been included in the document.

While the rule we have here set forth is not susceptible to a precise application, "it approaches certainty more nearly than any other that has been suggested." 4 Williston, Contracts (3d ed.), §638, p. 1043.

We come now to an application of these principles to the instant case.

The trial justice did not permit Dr. Ferrin to be questioned as to the existence of the alleged prior oral agreement nor was inquiry allowed either of him or Mr. Arcaro as to the reasons for the exclusion of that agreement from the lease. These inquiries were relevant to an ascertainment of the intent of the parties and the circumstances attendant upon the preparation and execution of the written lease. By propounding them complainant was attempting to elicit an evidentiary foundation upon which the trial justice could determine the consistency of the oral with the written and whether the parties in the light of the testimony refused might naturally have concluded to exclude that oral agreement from the written lease. Deprived of that foundation, the trial justice could not properly pass on whether in fact there was a prior or contemporaneous oral agreement concerning the plumbing and heating facilities, and if so whether it could supplement the written lease. It was error to have sustained the objections to these inquiries.

The trial justice found "* * * that there is no written agreement or oral agreement existing between the complainant and respondent concerning these additional facilities, to wit: the toilet facilities and heating facilities."

The complainant relying on *Beals* v. *Lord,* 86 R. I. 241, contends that the trial justice was in error in so finding because the positive testimony of Mr. Arcaro as to the oral agreement was uncontradicted and unimpeached either by direct testimony or by circumstantial evidence. Conceding

without deciding that the trial justice's finding is without evidentiary support, we cannot reach complainant's further contention that we should grant the relief it seeks because there is nothing in the record upon which a finding can be made as to whether the parties intended to exclude or would normally have excluded the prior oral agreement from the written lease.

In its reasons of appeal complainant has included one in which it states "That the Court erroneously excluded testimony and evidence to the prejudice of the rights of the Complainant" and in its brief has specifically enumerated a number of instances where it made objection and preserved exceptions to rulings excluding testimony. We have carefully considered each of such claims as well as its claim that errors were committed in admitting evidence. We deem only five of the former to have merit. These five complainant has inaptly designated in its brief as "exceptions" 11, 36, 37, 41 and 42, rather than as grounds for the reason of appeal hereinbefore quoted. Its other complaints as to the trial justice's rulings on evidentiary matters are either so lacking in merit as to require no discussion or are without prejudice to complainant.

The respondent has not contended that we are foreclosed under *Vaill* v. *McPhail*, 34 R. I. 361, from a consideration of complainant's contentions as to the alleged errors in excluding evidence on the ground that each such error has not been set forth as a separate reason of appeal, but has contented itself with the broad contention that the rulings were not erroneous and indeed has failed to address itself specifically to any of the evidentiary rulings alleged to have been erroneous. In the special circumstances of this cause, we do not raise sua sponte the question of the sufficiency of the grouping by complainant in a single reason of appeal of its various claims that testimony was erroneously excluded, but our failure to do so should not be construed as

a holding that if that issue were raised before us we would not reach a contrary conclusion. *Nelson* v. *Dodge,* 76 R. I. 1.

Though we infrequently do so, this court will in unusual situations remand equity cases for a retrial. *Rhode Island Hospital Trust Co.* v. *Gilleney,* 61 R. I. 23. This cause by reason of the incompleteness of the record on an essential issue presents such an unusual situation. In our opinion substantial justice to the parties requires a remand to the superior court for the exercise of its original equity jurisdiction after opportunity has first been given to the parties to present consistent with this opinion relevant evidence on the issue of whether they intended that all of their prior or contemporaneous oral understanding and negotiations would be merged or integrated into the written lease. It is also our opinion that, if possible, the additional evidence should be submitted to the same justice before whom the cause has already been heard, and that he should then enter a new decree based upon the evidence previously heard by him as well as such additional evidence as may be offered by the parties consistent with this opinion and in order to complete the record.

The complainant's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction that the justice who heard the bill of complaint, if available, shall determine, in accordance with this opinion, the ultimate issues raised.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for complainant.

*Adler, Pollock & Sheehan, Bernard R. Pollock, Peter Lawson Kennedy,* for respondent.