### James L. WELLS

v.

### UVEX WINTER OPTICAL, INC., et al.

No. 92–405–Appeal.

Supreme Court of Rhode Island.

Jan. 19, 1994.

Richard A. Skolnik, Providence, for plaintiff.

William P. Robinson, III, Alicia Murphy, Edwards & Angell, Providence, Stanley J. Brown, Trent M. Kittleman, Arent Fox Kintner, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Uvex Winter Optical, Inc. (Uvex), appeals from a judgment in Superior Court awarding the plaintiff, James L. Wells (Wells), $402,600 plus additional prejudgment interest, for a claim of breach of contract. We reverse and order a new trial.

The facts that give rise to this case concern two employment-severance agreements signed by both Wells and Uvex. Wells began his career in the safety-products industry in 1959. The safety-product industry provides protective equipment for workers in hazardous environments. These products include protective eye wear, respirators, hearing-protection devices, and hard hats. Wells

had spent nineteen years employed by American Optical (American), and four years employed by the Fendall Corporation (Fendall). Both American and Fendall have safety-products divisions in which Wells was employed.

In June 1983 Wells joined Uvex, a subsidiary of a German corporation, as marketing manager for its safety division located in Smithfield, Rhode Island. In November 1985 Wells and Uvex agreed to end their employment relationship. Two severance agreements were signed, both dated November 15, 1985. The first agreement was in memorandum form from Douglas Wilson (Wilson), president of Uvex. It stated, in part, that Uvex "will only provide *positive responses* to any prospective employers and will advise you [Wells] of any inquiries." (Emphasis added.) The second agreement was more formal and was drafted by attorneys for Uvex. It provided, in part, that "[t]he [c]ompany has furnished Wells with a letter of recommendation * * *. The [c]ompany will not furnish any other information to prospective employers of Wells without his specific written request and consent." Wells was unsuccessful in his job search throughout the year following his departure from Uvex. In December 1986 Wells filed suit, alleging that Uvex, through its president, Wilson, had breached its contract to respond positively to prospective employers of Wells. During the trial the trial justice granted a directed verdict with regard to all claims against Wilson personally.

Uvex appeals the Superior Court judgment on several grounds. Uvex contends that the trial justice erred by (1) incorrectly instructing the jury with regard to causation, (2) improperly excluding evidence of a collateral agreement between the parties, and (3) improperly excluding evidence of a discussion between a prospective employer and an employee subordinate. Uvex also asserts that the award of damages was unreasonable and excessive as a matter of law. Uvex raises several other issues in its appeal; however, we need not reach the merits of those arguments on the basis of our analysis of the aforementioned contentions.

Uvex first contends that the trial justice's causation instruction was legally insufficient. The trial justice instructed the jury as follows:

"[Y]ou must consider whether or not the contract breach was a proximate cause of the plaintiff's damage. Now, a proximate cause means a cause which, in natural, unbroken sequence, produced the events about which the complaint was made, * * * the continuing unemployment of the plaintiff. * * * [A] proximate cause need not of necessity be the sole or only cause or even the last or nearest cause. It is a proximate cause if it concurs or unites with some other cause and acting at the same time and in combination with such other cause produces the event in question."

A failure to instruct the jury adequately about the law applicable to the facts constitutes grounds for a new trial. *Ballet Fabrics, Inc. v. Four Dee Realty Co.*, 112 R.I. 612, 621, 314 A.2d 1, 6 (1974).

"Jury instructions must correctly state the law applicable to the charges upon which the jury must deliberate. * * * To determine whether the instructions state the applicable law, the inquiry is 'how a jury composed of ordinarily intelligent persons listening to that instruction * * * would have appreciated the instructions as a whole.' * * * The instructions given must be taken as a whole as 'this court reviews the jury charge in its entirety to determine its correctness.'" *State v. Payette*, 557 A.2d 72, 73 (R.I.1989).

Uvex contends that the trial justice failed to instruct the jury clearly that in order for Wells to recover, he had to show that "but for" the actions of Uvex, Wells would have obtained employment. Uvex contends that the trial justice's instruction implies that "if another cause or causes would have produced the injury without the occurrence of the breach, the breach could still be considered a 'proximate cause' if it added to the likelihood that the injury would occur." Consequently Uvex contends that even if the jurors believed that Uvex's actions contributed in a minor manner to Wells' inability to find employment, they would be required to find for Wells.

Wells contends that the jury instructions were adequate, relying on *Mesolella v. City of Providence*, 508 A.2d 661 (R.I.1986). Wells avers that in *Mesolella* this court "cited approvingly" an extrajurisdictional case in which recovery was not allowed because proximate causation was absent. *Id.* at 669 n. 9; *see King v. Seattle*, 84 Wash.2d 239, 525 P.2d 228 (1974). The language of *King* does not support Wells' position. The *King* case involved the tort of intentional interference with contractual relations. This is a breach-of-contract question. Second and more important, the *King* court specifically stated that a cause in fact is required, specifically using "but for" language.

"The City's actions here were a *cause in fact* of the plaintiff's damages * * *. *But for* the City's acts [the plaintiff would not have had to acquire] a federal permit.

"This is the sense in which the term 'proximate cause' is often discussed. * * * Cause in fact is not, however, the sole determinate of proximate cause, and in a broader sense the question of law as to whether legal liability should attach, *given cause in fact*, is the question * * *." (Emphasis added.) *Id.* at 249, 525 P.2d at 234.

"There is * * * a fundamental requirement, similar to that imposed in tort cases, that the breach of contract be the cause in fact of the loss, although the presence of other contributing causes may not preclude recovery." 3 E. Allen Farnsworth, *Farnsworth on Contracts*, § 12.1 at 148 (1990). If *King* persuades us in any manner, it is for the proposition that the instructions were inadequate.

Uvex cites *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir.1988), *cert. denied*, 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989), in support of its assertion that the jury instructions were inadequate. In *Redgrave* the jury was given appropriate instructions when informed that the Boston Symphony Orchestra's breach of contract was a proximate cause of harm to Redgrave's professional career only if it determined that the " 'harm would not have occurred *but for* the cancellation [of the contract] *and that the harm was a natural and*

*probable consequence* of the cancellation.' " (Emphasis added.) 855 F.2d at 893.

"[A]lthough there may have been other contributing causes [of the harm sustained, the defendant is not liable unless his or her actions were the] *'primary'* * * * *cause* [of that harm]. * * * 'Legal cause' is that it shall have been a *substantial* factor in bringing about the harm." (Emphasis added.) *Krauss v. Greenbarg*, 137 F.2d 569, 572 (3d Cir.1943).

We believe that the trial justice's causation instruction was deficient because the instruction did not specifically emphasize that Uvex's actions of breaching the severance agreements must have been a substantial or primary cause of Wells' injuries. We find that the trial justice's proximate-cause instruction was "too subtle to inform the jurors fully [of their obligations]." *Lutz Engineering Co. v. Industrial Louvers, Inc.*, 585 A.2d 631, 637 (R.I.1991). We believe that the instruction noted in *Redgrave* adequately defines the elements of both actual and proximate causation necessary to impose liability. Consequently the trial justice erred by not sufficiently instructing the jurors on causation. Although this issue is dispositive of Uvex's request for a new trial, we wish to address several issues in establishing some guidelines for the new trial.

Uvex next contends that the trial justice erred by excluding parol evidence of a collateral agreement. Wilson was not allowed to testify to the fact that at the time the severance agreements were signed, another unmemorialized agreement existed. Uvex represented at trial that if Wilson had been allowed to testify, he would have asserted that he and Wells had an understanding that if potential employers asked Wilson why Wells was no longer employed by Uvex, Wilson would inform them that Wells had problems relating to the "European" owners. The trial justice ruled that the proposed testimony was inadmissible according to the parol-evidence rule.

■ " 'Few subjects connected with the interpretation of contracts present so simple and uniform a statement of principle, bedeviled by such a perplexing and harassing

number of difficulties in its application, as the parol evidence rule.'" *Golden Gate Corp. v. Barrington College*, 98 R.I. 35, 40, 199 A.2d 586, 589 (1964). "[T]he parol evidence rule makes inadmissible prior understandings or agreements for the purpose of contradicting, altering, adding to or varying the terms of a written contract." *Id.* at 39, 199 A.2d at 589. Parol evidence is not always susceptible of simple testing for the presence or absence of fraud, mistake, or ambiguity. *Id.* at 41, 199 A.2d at 590. If a document is determined to be fully integrated, then parol evidence is not allowed to be introduced; however, if the document is not fully integrated, parol evidence is allowed. *Id.* An "integrated document is one 'where the parties thereto adopt a writing or writings as the final and complete expression of the agreement.'" *Id.* The difficulty lies in discerning if the document is fully integrated. *Id.* "Parol evidence may also be admitted to supplement an agreement that is incomplete or ambiguous on its face." *Lisi v. Marra*, 424 A.2d 1052, 1055 (R.I.1981).

■ The record reflects two severance agreements, both purporting to be "the entire agreement between the two parties." The first agreement provided that Uvex "will only provide positive responses to any prospective employers." The second agreement stated that Uvex would furnish Wells with a letter of recommendation and that Uvex "will not furnish any other information to prospective employers of Wells without his specific written request and consent." The second agreement further provided that "this agreement shall not be made public." There was no such stipulation in the first agreement.

Two documents purporting to be the final agreement between the parties, with the first referencing the second and each containing terms that the other does not, raise at least a question of ambiguity. In viewing the agreements together, we do not hold that the two agreements were part of one transaction evidencing the final and complete expression of the parties. *Cf. Maderios v. Savino*, 418 A.2d 839 (R.I.1980) (two promissory notes were executed as part of one loan transaction and were construed together to determine the rights and the obligations of the parties). The writings suggest more than one meaning, as is eminently evidenced by the fact that two agreements purport to be the final agreement between the parties. We believe that the writings were not the final and complete expression of the agreement between the parties, and consequently we conclude that these agreements were not fully integrated. Therefore, evidence of prior or contemporaneous oral statements are admissible to aid in the understanding of the agreement. The trial justice erred in not allowing the testimony.[1]

■ Uvex next contends that the trial justice erred by disallowing as hearsay, testimony from John Flanagan (Flanagan), president of American. Before the deposition of Flanagan was read into evidence, the trial justice ruled that part of the deposition testimony would be disallowed. The trial justice excluded Flanagan's testimony that he had spoken to American's national sales manager and she had informed him that she did not think it "would be good for American Optical to bring Jim [Wells] on board." Initially the trial justice concluded that the testimony was inadmissible hearsay. Subsequently the trial justice allowed Uvex to argue "in reconsideration" of that ruling. In his second ruling the trial justice held that the comments of the sales manager might be admissible because they were not offered for the truth of the matter asserted. However, the trial justice further clarified his position when he stated that although the testimony might be "technically admissible, it might be more prejudicial than it would be valuable to the defense." It appears that the trial justice excluded the evidence after a weighing analysis pursuant to Rule 403 of the Rhode Island Rules of Evidence. We now review the proposed testimony under both a hearsay and a Rule 403 analysis.

---

1. Our holding is further corroborated by the fact that the trial justice had previously allowed testimony concerning a collateral agreement regarding health-insurance coverage. In fact the trial justice specifically found that "both agreements * * * are obviously not integrated agreements. They do not contain the kind of agreement as admitted to by the participants." (Emphasis added.)

"Statements not offered to prove the truth of what they assert are not hearsay and as such do not require the assistance of an exception to the hearsay rule in order to be admissible." *In re Jean Marie W.*, 559 A.2d 625, 629 (R.I.1989). We believe, as it also appears did the trial justice, that the testimony was offered to prove the effect that the statement had on Flanagan. The testimony was not offered to show that it *would be a mistake* to hire Wells; rather the testimony was offered to prove the fact that someone other than Uvex personnel informed Flanagan that hiring Wells would be a mistake. This is an important distinction because Wells claims that Uvex breached its agreement to provide only positive references, and in this instance the evidence offered could have shown that a source other than Uvex had influenced Flanagan's decision. The statement was offered to show the effect of "publication" on Flanagan and was consequently not hearsay. *See generally Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 326 (R.I.), *cert. denied*, 493 U.S. 814, 110 S.Ct. 63, 107 L.Ed.2d 30 (1989).

■ The trial justice apparently excluded the evidence concerning the statement of American's national sales manager on the ground that pursuant to Rule 403, that testimony would be more prejudicial to Wells than it would be of value to the defense. With this analysis we must disagree. In our opinion that evidence was highly probative that the decision on the part of Flanagan not to hire Wells was influenced by an evaluation completely separate and apart from any information that may have been conveyed as a result of contact from a representative of Uvex.

Naturally this evidence was prejudicial to Wells, but properly so. Its prejudicial effect did not outweigh its relevance. It directly affected the claim of Wells that his employment opportunity had been in this instance foreclosed solely by an inappropriate response from Uvex through its president, Wilson. Generally all relevant evidence is admissible. Although the trial justice may have discretion pursuant to Rule 403 to exclude evidence whose prejudicial effect outweighs its relevance, such discretion must be exercised sparingly. The determination of the value of evidence should normally be placed in the control of the party who offers it. Unless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it. We conclude that the exclusion of this evidence from a deposition wherein Wells had every opportunity to cross-examine the witness, Flanagan, constituted an abuse of discretion.

Finally Uvex contends that the jury's award of damages was unreasonable, against the weight of the evidence, and excessive. Wells contends that the jury award of $402,-600 is reasonable because that approximates his lost compensation from Uvex. Wells' contention is based on an exercise in simple arithmetic. He avers that because the trial occurred six years after the parties entered into the severance agreements, and at that time his annual earnings were $67,500, his total damages would be some $405,000. We do not agree.

"It is well established that the rule concerning damages is designed to place the injured party in *as good a position as he would have been in had the contract been fully performed * * *.*" (Emphasis added.) *Rhode Island Turnpike and Bridge Authority v. Bethlehem Steel Corp.*, 119 R.I. 141, 166, 379 A.2d 344, 357 (1977). This is not a question of whether a breach of an employment contract occurred; rather it is a question of whether a breach of a severance agreement occurred. Once the severance agreements were signed and the employment relationship terminated, Uvex had no obligation to pay Wells a salary. Regardless of which severance agreement controls, Uvex was required to provide references on behalf of Wells to prospective employers. According to our standard for contract damages, the damages were supposed to put Wells in as good a position as he would have found himself in if the severance agreements had been fully performed.

Full performance of the severance agreements on behalf of Uvex was at least to provide some form of a reference. Therefore, the proper measure of Wells' damages is the compensation he would have earned if he had been afforded employment that he

was later denied because of Uvex's breach of the agreements. Wells did not present sufficient evidence of these foregone opportunities to support the award of damages. "An award of damages must rest on legally competent evidence establishing the nature and extent thereof; such an award may not properly be the result of speculation or conjecture." *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 314, 377 A.2d 237, 240–41 (1977). At the new trial Wells should establish the salary ranges of specific opportunities that were lost as a result of the breach of the severance agreements.

Consequently for the aforementioned reasons the defendant's appeal is sustained, the judgment appealed from is vacated, and the papers of the case are remanded to the Superior Court for a new trial.