DECISION
The plaintiff, Medical Malpractice Joint Underwriting Association of Rhode Island (MMJUA), petitions this Court for declaratory relief pursuant to G.L. 1956 § 9-3-1, et seq. The issue to be determined by this Court involves the liability limit available to the MMJUA's insureds, Doctor Roe and the corporation under which he operated, the R S Corporation (Corporation).[1]
 Facts/Travel
The defendant, Jane Doe (Doe) and her now deceased husband, John Doe[2], brought a medical malpractice action against Dr. Roe and the R S Corporation in March of 1996. The MMJUA insured Roe and the corporation under a Physicians, Surgeons Dentists Professional Liability Insurance policy at the time of the alleged malpractice.
During the course of settlement negotiations, the parties agreed to settle the suit for the policy limits. What the policy limits were, however, remained a point of contention between the parties. The MMJUA asserted that both Roe and the corporation shared a liability limit of $1,000,000. Doe read the policy as providing separate liability limits of $1,000,000 to both Roe and the corporation.
Ultimately the parties agreed to a "General Release and Settlement Agreement," which, by its terms, provided a $1,000,000 payment to the Does, released Roe and the corporation from any further and future liability, thus dismissing with prejudice the malpractice action, and incorporated a "Coverage Dispute Agreement." The Coverage Dispute Agreement required that the MMJUA file this present action for a declaration of the limits of the MMJUA's liability under the malpractice policy.
Subsequently, MMJUA filed a motion for summary judgment and a motion to dismiss defendant's counterclaims. Doe filed a counter-motion for summary judgment. The parties' respective arguments as to these motions are addressed in the declaratory judgment.
 Policy Amendment
Just prior to the parties' motion hearing on November 7, 1997, Doe's counsel discovered an amendment to the insurance policy at issue. The policy is entitled, "Physicians, Surgeons and Dentists Professional Liability Insurance," form number JUA-20. The policy is marked as "Ed. 4/97." The amending language is as follows: "[t]he applicability of coverage under Coverage N shall in no way increase the total liability of the company beyond the limits of liability set forth in the schedule as to `each medical incident' and `aggregate'." Additionally, Doe's counsel discovered an MMJUA document entitled, "Amendatory Endorsement — Notice." This document highlights the amendment language, states that the endorsement forms a part of the underlying policy effective on the inception date of the policy unless otherwise stated, and provides an explanatory paragraph addressing the purpose and meaning of the amendment.
Doe argues that this amendment, in essence, serves as an "admission" of the policy's inherent ambiguity that should be considered by the Court. The MMJUA responds that a determination of ambiguity, a question of law, is confined to the "four corners" of the policy. Extrinsic evidence such as the amendment, the MMJUA states, cannot play a role in the initial determination of ambiguity. Further, the MMJUA argues that the amendment and its accompanying statements are neither "judicial admissions" nor evidence of ambiguity. Finally, the MMJUA asserts that a determination of the ambiguity must be framed by an examination of the policy as whole, and not by an examination of a "provision in isolation."
The MMJUA's reliance on the parol evidence rule as a bar to this evidence is misplaced. The parol evidence rule renders inadmissible prior or contemporaneous understandings or agreements sought to be introduced for the purpose of contradicting, altering, adding to or varying the terms of a written contract. Golden Gate Corp. v. Barrington College,98 R.I. 35, 39, 199 A.2d 586, 589 (1964) (citations omitted) (emphasis added). A fully integrated document will prevent the introduction of parol evidence. Id. at 41, 199 A.2d at 590. An integrated document results where the parties adopt a writing or writings as the final and complete expression of the agreement.Id. (citation omitted). Further, parol evidence may be admitted to "supplement an agreement that is incomplete or ambiguous on its face." Lisi v. Marra, 424 A.2d 1052, 1055 (R.I. 1981) (citation omitted).
Here, the MMJUA adopted the amendment at issue well after
(April 1997) the commencement of the malpractice insurance policy on June 24, 1994. This Court will consider the amendment and supporting documents in determining the underlying issue embodied in the declaratory judgment petition.
On a parallel note, Doe provided to the Court much extrinsic evidence dating from a period prior to the commencement of the 1994/1995 policy. The MMJUA, although responding with additional evidence of its own dating from this period, argues that these document are "extraneous," "irrelevant" and are not to be interpreted as Doe applied them. In turn the MIMJUA offers its own interpretation of the pre-policy evidence provided to the Court.
In accordance with its decision to consider post-policy documents, this Court will likewise consider pre-policy documents as an aid to determining the underlying issue of coverage. Such consideration is warranted because upon review of the 1994/1995 policy in its entirety, this Court finds the contract inherently and facially ambiguous. Thus, this Court will consider extrinsic evidence put before it by both parties. The Court notes, however, that the policy itself, inclusive of the Declaration Sheet, "Schedule A," the general policy provisions or so-called "policy jacket" and endorsements, remains of utmost importance in rendering this declaratory judgment and, in fact, is the exclusive "jumping off" point for an initial determination of ambiguity. Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 551-552 (R.I. 1990) (citations omitted).
 Policy Ambiguity
The presence or lack of ambiguity within the malpractice insurance policy will be determinative of the liability limit issue. The initial analysis of a policy involves a review of the policy in its entirety. Id. at 552. Plain, ordinary and usual meanings are to be applied to the policy's terms. Id. If the terms of an insurance policy are determined to be clear and unambiguous, judicial construction is at an end for the terms will be applied as written. Id. at 551. An ambiguity results when the policy is "`reasonably and clearly susceptible to more than one interpretation.'" URI CoGeneration Partners, LP v. Board ofGov. for Higher Educ., 915 F. Supp. 1267, 1281 (D.R.I. 1996) (citation omitted). Where an ambiguity is present in a policy, typically resulting in two or more reasonable interpretations of that policy, the language used must be construed against the insurer and in favor of the insured. See Bartlett v. Amica Mut.Ins. Co., 593 A.2d 45, 47 (R.I. 1991) (citation omitted).
A review of the policy's "POLICY DECLARATIONS" or so-called "declaration sheet" is of "paramount importance" in ambiguity analysis because it is a personalized document prepared for each individual insured. Sentry Insurance Co. v. Grenga, 556 A.2d 998, 1000 (R.I. 1989). Reasonable expectations concerning coverage and the limits of coverage stem from the declarations page. Mallanev. Holyoke Mut. Ins. Co. in Salem, 658 A.2d 18, 20 (R.I. 1995).
The MMJUA declaration page issued to Roe and the Corporation designates those persons or entities with the status of "NAMED INSURED." "R S CORPORATION AND/OR JOHN SMITH AND JAMES ROE INDIVIDUALLY" are the policy's named insured. Next, the policy period and total advance premium is noted. The type of professional liability insurance is then designated as well as the limits of liability. This critical portion of the form appears as follows:
-----------------------------------------------------------------------| | Professional Limits of Liability Advanced | | [Liab. Ins.] (Thousands of Dollars) Premiums | |------------------------------------------------------------------------ | Physicians, | Each Medical | Aggregate | 31,520 | | Surgeons and | Incident $1,000 | $3,000 | | | and Dentists* | | | | |____________________|_____________________|_________________|__________|
* This coverage applies to partnerships, nurses and other qualifying heath care professionals.
This provision can reasonably be read to mean that each of the named insureds has a $1,000,000 limit of liability for "each medical incident." The MMJUA argues that this is not the case. The policy states, MMJUA alleges, that the Corporation is to share the $1,000,000 limit of liability per medical incident with either Dr. Roe, as is the case here, or Dr. Smith. A plain reading of the declaration sheet does not exhibit this alleged meaning or intent. See St. Paul Fire and Marine InsuranceCompany, 26 F.3d 1195, 1199 (1st Cir. 1994) (citations omitted).
The document entitled "PHYSICIANS, SURGEONS AND DENTISTS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART — OCCURRENCE," referred to by the parties as "Schedule A," is to be read as part of the declaration sheet.[3] Schedule A appears to outline in further detail the broad information provided in the declaration sheet. In particular, itemized premiums are assigned to the named insured. Assignments to Smith and Roe are aligned with what is designated "M. Individual Coverage." A corporate premium is aligned with "N. Partnership Coverage." A premium is also assigned to a non-shareholder physician working for the corporation.(This premium is not represented in the reproduced segment of the document at footnote 3.) Limits of liability are stated to be $1,000,000 for "each medical incident" and $3,000,000 in the "aggregate."
Of particular note is a prefatory statement in the document introducing the "layout" of premiums, limits of liability, coverage, codes and named insureds. The statement reads: "The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."
A plain reading and application of this preface evidences the following. First, the policy provides coverage to the Corporation. Secondly, each such coverage, inclusive of three separate parties — Drs. Roe and Smith and the Corporation — is provided with the stated $1,000,000 liability limit for each medical incident. Such an understanding is the natural result of the language and layout chosen by the insurer and is not due to the exercise of "mental gymnastics." See Mallane, 658 A.2d at 20 (citations omitted). To read this document in another reasonable manner admits to ambiguity. In such a case, the document isstrictly construed against the insurer. Bartlett, 593 A.2d at 47 (emphasis added).
Further, the payment of separate premiums by the Doctors and the Corporation, as is the case here, gives rise to the reasonable expectation of separate coverage, a contract expectation, in fact, held by the policy holder. Taft v.Cerwonka. 433 A.2d 215, 218-219 (R.I. 1981) Although this Court is mindful of the Supreme Court's careful limitation of the Taft
holding, the two premium/two coverage principle is applicable to the present matter. Dr. Smith, who administered the business duties of the Corporation, including the procurement of malpractice insurance, stated his belief that the separate payment of premiums for the individual physician shareholders and the professional corporation insurance resulted in separate layers of "insurance" for the physicians and the corporation. See
Affidavit of John Smith.
Under the MMJUA's analysis, both the declaration sheet and Schedule A result in a finding that the $1,000,000 limit of liability per medical incident is shared between Roe and the Corporation. In a blanket statement the MMJUA argues that the declaration chart "simply illustrates" MMJUA's $1,000,000 liability limit with respect to the entire policy. (Memorandum of Law in Support of MMJUA's Motion for Judgment on the Pleadings or Summary Judgment and its Motion to Dismiss the Counterclaim under Rule 12 (b)(6) at p. 12) (emphasis supplied). Further, the MMJUA asserts that "[a] reasonable insured . . . would see from the chart he [sic] has purchased a single policy providing a maximum of $1,000,000 of coverage for each medical incident — without regard to the number of individuals or entities that might be insureds under the insurance policy." (Id., pp. 12-13) This result that the MMJUA proffers, however, is, at the very least,one of several possible reasonable readings of the document.
Efforts by the MMJUA to establish further what it states to be an unambiguous policy by a review of Schedule A are ineffective. The layout or "chart" (See footnote 3) is said to "graphically confirm" the shared limit of liability. The MMJUA argues that the one "block" utilized under the "Limits of Liability" column is indicative of shared limits of liability between Roe and the Corporation. Had separate coverage been the intent of the policy, the MMJUA asserts, separate boxes depicting $1,000,000 limits would have been drawn into the chart. The chosen layout and language of the insurer does not defeat a reasonable reading of the policy in which separate coverage is understood to be provided.
A review of the policy jacket by this Court further renders ambiguity as found in the two-part declaration sheet. The policy jacket is home to what the MMJUA refers to as "boiler plate [sic] policy language." (Reply Memorandum of Law in Support of MMJUA's Objection to Doe's Cross-Motion for Summary Judgment at p. 4) In reviewing the general policy provisions this Court notes that "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured."Mallane, 658 A.2d at 21 (citations omitted).
This Court analyzed the paragraph entitled "III Limits of Liability," a section critical to both side's arguments. Terms defined in the "Definitions" segment of the policy including "insured," "named insured," and "medical incident," found at "Section V. ADDITIONAL DEFINITIONS," were read in conjunction with Section III. The MMJUA stresses that the language found in Section III equates to an understanding that because one policy is issued to the medical practice, liability for any one medical incident is capped at $1,000,000. This Court again disagrees with MMJUA's claim that this is the only possible (yet reasonable) meaning to be drawn from this language. In fact, the last sentence in Section III under the heading, "Coverage N — Partnership, Association, or Corporation Professional Liability," directs the reader to return to the "schedule" for a statement of the liability limit. Reasonably assuming that schedule is a reference to the declaration sheet and Schedule A, one returns futilely for clarification to a section inherently ambiguous. The MMJUA's own circuitous argument underscores the ambiguous quality of the policy.
 4/97 Amendment
An insurance policy is a contract and is thus subject to the rules of contract construction. Malo v. Aetna Casualty and SuretyCo., 459 A.2d 954, 956 (R.I. 1983). In instances of contract ambiguity, a court may consider "all accompanying circumstances" to assist in the interpretation of that contract. Dial Media.Inc. v. Schiff, 612 F. Supp. 1483, 1487-1488 (D.C.R.I. 1985) (citations omitted). This Court, having made the threshold determination of ambiguity, will apply the offered extrinsic evidence to aid its construction of the policy.
The amendment is an addition of language to the policy jacket, specifically to Section III Limits of Liability. This change is coupled with an "Amendatory Endorsement — Notice" document which highlights the additional language and offers an explanation for its inclusion in the policy. Of note, the endorsement "explanation" states, "[t]his additional language is meant to clarify the limits of liability provision of your policy, and to state simply what was always the intent of the policy. Specifically the insured physician . . . and the insured professional corporation or partnership share the same limit of the company's liability for each medical incident."
This change apparently stems from the MMJUA's knowledge of, and concern for, the "potential for interpretation" of the policy in an unintended manner, that is, separate liability. This knowledge dates back to May of 1989, apparently. See Lovely Affidavit, Ex. 7, "Minutes of the Meeting of the Board of Directors of [MMJUA]" The MMJUA then sought and received approval for this addition to the policy language from the Department of Business Regulation, Division of Insurance in 1989. Apparently this approval was not implemented by the MMJUA until April 1997.
The history leading up to the new policy language and the language itself bolster this Court's previous finding of ambiguity without the aid of the extrinsic language. This determination is that the policy is ambiguous on its face. Although the policy is subject to more than one reasonable interpretation, the interpretation proffered by Doe is a reasonable interpretation of same.
After examining the terms of the policy and considering the admissible extrinsic evidence before it, this Court declares that said policy, construed against the drafter, provides a separate limit of liability to both Dr. Roe and the Corporation. A $1,000,000 limit of liability is provided to the Corporation under the policy. Similar $1,000,000 limits of liability are separately provided to Doctors Roe and Smith. Accordingly, Jane Doe is entitled to judgment as a matter of law.
Counsel shall submit the appropriate judgment for entry.
[1] The parties agreed to provide the defendant, Jane Doe, and the MMJUA's insureds with aliases to maintain confidentiality.
[2] John Doe died prior to this declaratory judgment action.
[3] The pertinent portion of the document reads:
 PHYSICANS, SURGEONS AND DENTISTS PROFESSIONAL LIABILITY INSURANCE COVERAGE PART — OCCURRENCE * * * SCHEDULE A
The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.
|-------------------------------------------------------------------------| | Advance | Limits of | Coverages | Code | Named of | | Premium | Liability | | | Insured | | | (Thousands of | | | | | | Dollars) | | | | |------------|------------------|---------------|---------|---------------| | $12,865.00 | $1,000 each | M. Individual | 80 274 | [John Smith] | | | medical incident | Coverage | | | |------------| | |---------|---------------| | 12,865.00 | | | 80 274 | [James Roe] | |------------| | |---------|---------------| | | $3,000 | | | | |------------| aggregate | | | | |------------| |---------------|---------|---------------| | 2,574.00 | | N. Partnership Coverage 80999 | |-------------------------------------------------------------------------|