Carmen P. BOSCIA

v.

Jami C. SHARPLES et al.

No. 2003–270–Appeal.

Supreme Court of Rhode Island.

Nov. 12, 2004.

Michael R. DeLuca, Providence, for plaintiff.

Patrick B. Landers, Providence, for defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on September 28, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. For the reasons set forth herein, we sustain the appeal, vacate the judgment of the Superior Court, and remand this case for a new trial.

On October 4, 1996, while stopped in an attempt to enter the flow of traffic on Route 37 from Pontiac Avenue in Cranston, plaintiff, Carmen P. Boscia (Boscia or plaintiff), was struck in the rear by a vehicle driven by defendant, Jami C. Sharples (Sharples).[1] On September 16, 1999, plaintiff filed this negligence action against Sharples and Gold Key Lease, Inc., (Gold Key or, collectively, defendants) alleging personal injuries resulting from the collision.[2]

The defendants admitted liability for the collision and moved *in limine* to exclude photographs of the damaged vehicles, arguing that expert testimony is required to introduce photographs to establish proximate cause of a passenger's personal injuries. Further, defendants asserted that

1. Between the inception of the lawsuit and the date of trial, Jami C. Sharples married and took the surname McMahon. For the sake of consistency with the caption, this Court will continue to refer to her by her maiden name, Sharples.

2. Sharples leased the vehicle she was driving at the time of the accident from Gold Key.

because they were stipulating to liability, there was no basis for admission of the photographs. The plaintiff countered that the photographs would be used to show the mechanism of injury. Specifically, plaintiff contended that the photographs would illustrate that Sharples's vehicle became wedged under Boscia's rear bumper and pushed the back-end of Boscia's vehicle up and the front-end forward and downward. The plaintiff sought to show that the collision forced him forward and that when he raised his elbow to protect his face, his elbow hit the dashboard, forcing his shoulder back and causing injury. The trial justice, finding plaintiff could adequately describe the collision and mechanism of injury through testimony, granted defendants' motion, further concluding that the photographs would be "unduly prejudicial."

In January 2003, a jury trial proceeded on the issue of damages. Boscia testified that he suffered pain in his back, neck, and right shoulder as a result of the impact. He contended that the injury to his shoulder was permanent and that his ability to move his right arm in a swinging motion above his head was impaired. Boscia further contended that the pain he experiences from the shoulder injury limits his ability to perform certain carpentry tasks associated with his homebuilding business and restricts his activities with his children, such as playing ball.

As evidence of damages, Boscia submitted medical bills for treatment received from various physicians, chiropractors, and testing facilities, which plaintiff argued amounted to $7,239. In addition, Boscia sought damages for pain and suffering for his alleged partial disability. The defendants cross-examined Boscia about two subsequent automobile collisions in which he was involved in 1998 (1998 collisions). Initially, defendants used medical records related to treatment plaintiff received after the 1998 collisions to refresh plaintiff's recollection of those incidents. As cross-examination proceeded, defendants used the medical records to impeach plaintiff's testimony that he was not disabled by the 1998 collisions. The defendants then sought to introduce the medical records as full exhibits and, over plaintiff's objection, the trial justice allowed these documents into evidence.

When the jury declined to award plaintiff any damages, the trial justice, at defendants' request, asked the jury to revisit the issue of compensatory damages in light of defendants' further stipulation to "some damage." After reconsidering the evidence, the jury returned a verdict for plaintiff in the amount of $3,500. The plaintiff moved for an additur or, in the alternative, a new trial, asserting that the verdict was motivated by passion or prejudice and not in accord with the law or the weight of the evidence.

The plaintiff argued that if the jurors believed that Boscia suffered no compensable injury, they would have returned a second verdict of no damages. Thus, plaintiff maintained, the verdict of $3,500 showed that the jury believed Boscia, but that they were unwilling to give him a "fair amount." In addition, plaintiff asserted that introduction of the unauthenticated medical records relating to the 1998 collisions, without evidence that Boscia's right shoulder was injured or aggravated in the 1998 collisions, created an improper inference that his injury was not related to the accident with Sharples.

The trial justice denied the motion, concluding that the jury had sufficient grounds to support the verdict. At the outset, the trial justice noted that defendants' admission of liability did not, in and of itself, warrant a verdict for the plaintiff. The trial justice went on to find that there

was more than one possible conclusion to be drawn from the medical testimony, particularly in light of her instruction that the jurors need not accept all the medical evidence.

Moreover, the trial justice found that plaintiff's testimony "did not ring true;" noting his continuing hockey playing, history of accidents, and "amorphous pain and suffering." In contrast, the trial justice found defendant Sharples to be "very pleasant, very straightforward, ultimately compelling because she did ring true." The trial justice posited that the jury must have made the same credibility determinations, which thereby justified its verdict. Thereafter, plaintiff filed a timely appeal.[3]

On appeal, Boscia posits three issues for our consideration. The plaintiff challenges the trial justice's evidentiary rulings excluding photographs of the damaged vehicles and allowing the unauthenticated medical records associated with the 1998 collisions into evidence. Additionally, plaintiff asserts that the trial justice erred in denying his motion for an additur or, in the alternative, a new trial.

### Exclusion of the Collision Photographs

■ In granting defendants' motion to exclude the use of photographic evidence, the trial justice found that the collision photographs were "unduly prejudicial." The plaintiff argues that the photographs were relevant to show his theory of injury and that they were not unduly prejudicial.[4] In granting defen-

dants' motion *in limine*, the trial justice declared:

"Your description—your description of the accident as you contend it happened is very illustrative. And I don't doubt that between you and your client and the doctors they can convey that to the jury, and they will ultimately weigh those facts. So the photos are not necessary. In fact, they would be, the Court would find, unduly prejudicial. No question they'd be—everything's prejudicial. This is unduly prejudicial."

The trial justice did not suggest that the photographs were irrelevant, but found that, in light of the testimony to be produced by plaintiff, the photographs were "unduly prejudicial." However, the trial justice offered no reason why she found the photographs "unduly prejudicial" or, in fact, how they would prejudice defendants' case. We deem this to be error.

■ It is well settled that "the admissibility of evidence is within the sound discretion of the trial justice." *State v. Grayhurst*, 852 A.2d 491, 504 (R.I.2004) (quoting *State v. Reis*, 815 A.2d 57, 61 (R.I.2003)). "[W]hen reviewing such decisions, we will not conclude that a trial justice abused his or her discretion as long as some grounds to support the decision appear in the record." *Id.* at 505 (quoting *State v. Pena–Rojas*, 822 A.2d 921, 924 (R.I.2003)). Although ruling on the admissibility of photographs requires an exercise of discretion, the trial justice must articulate his or her reasons for the exercise of that discretion. *See State v. Barnes*, 777

---

3. The plaintiff filed a notice of appeal on February 10, 2003. The order denying plaintiff's motion for an additur or, in the alternative, a new trial, was not entered until February 25, 2003. The plaintiff's notice of appeal is valid, nonetheless, because the Superior Court did enter a final judgment. *See United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 n. 9 (R.I.2003).

4. The plaintiff also asserts that the photographs were relevant to refute defendants' statements at trial that the collision was only a minor "bump." The plaintiff failed to raise this objection at trial and, therefore, this issue is not properly before the Court.

A.2d 140, 144 (R.I.2001) (when acting pretrial to exclude relevant evidence, the trial justice should set forth clearly his or her reasons for granting or denying a motion *in limine*). "The determination of the value of evidence should normally be placed in the control of the party who offers it." *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I.1994). Moreover, "[u]nless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." *Id.*

Our review of the record reveals no basis on which to characterize the photographs as "unduly prejudicial." Under Rule 401 of the Rhode Island Rules of Evidence, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 of the Rhode Island Rules of Evidence provides that "[a]ll relevant evidence is admissible," except as otherwise provided by law. We are satisfied that the photographs at issue in this trial were relevant as tending to prove that defendants' vehicle became wedged underneath plaintiff's vehicle, thereby supporting plaintiff's theory of the case. The plaintiff was entitled to all reasonable inferences that could have been drawn from that offer of proof.

Rule 403 of the Rhode Island Rules of Evidence vests a trial justice with discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, even assuming the trial justice found the evidence to be "of limited or marginal relevance," *Wells*, 635 A.2d at 1193, without some explanation of how the photographs were considered prejudicial and that the prejudice substantially outweighed the probative value of the evidence, we cannot deem their exclusion to be an exercise of sound discretion. Therefore, we conclude that the trial justice abused her discretion in excluding the collision photographs.

■ The defendants further contend that expert testimony is required to establish a link between the severity of injuries suffered in a motor vehicle collision and photographs of the damaged vehicles. This Court has never held that expert testimony is necessary to introduce into evidence photographs of vehicles damaged in a collision to prove causation of passengers' injuries. We decline to do so today.

### Admission of the 1998 Collision Records

The record discloses that defendant was permitted to introduce medical records that were not properly authenticated in accordance with the procedure set forth in G.L.1956 § 9–19–27.[5] According to plain-

---

5. General Laws 1956 § 9–19–27 provides in pertinent part:

"**Evidence of charges for medical and hospital services and for prescriptions and orthopedic appliances—Evidence required from hospital medical records.**—(a) In any proceeding commenced in any court, commission, or agency, an itemized bill and reports * * * relating to medical, dental, hospital services, prescriptions, or orthopedic appliances rendered to or prescribed for a person injured, and/or any report of any examination of the injured person, including, but not limited to, hospital medical records subscribed and sworn to under the penalties of perjury by the physician, dentist, or authorized agent of the hospital rendering the services * * * shall be admissible as evidence of the fair and reasonable charge for the services and/or the necessity of the services or treatment, the diagnosis of the physician or dentist, the prognosis of

tiff, defendants offered the medical records in question to establish, in the absence of any expert opinion or medical diagnoses, that his shoulder injury was the result of the 1998 collisions and not the collision with Sharples. Although defendants admit that they did not comply with the provisions of § 9–19–27, they argue that the records were admitted to attack plaintiff's credibility and were admissible on that basis.

The defendants further suggest that "medical records from other accidents proffering a similar 'impairment' from those accidents were admissible on the issue of proximate causation." However, the record discloses that plaintiff admitted that he experienced periods of disability after the 1998 collisions and the question of whether the impairments were similar was contested. At trial, the defendants argued for the admission of the medical records on the basis that plaintiff produced the medical records in discovery and, therefore, they were admissible.

This Court reviews questions of law *de novo. LePage v. Babcock,* 839 A.2d 1226, 1229 (R.I.2004) (per curiam). The defendants were unable to articulate, in either

their written submissions or during oral argument, the evidentiary basis for introducing unauthenticated medical records into evidence.

Section 9–19–27 provides a mechanism for admission of opinion evidence through documentation, without the need for expert testimony. *Martinez v. Kurdziel,* 612 A.2d 669, 673 (R.I.1992). The statute protects the opponents of such evidence by requiring advance notice. *Id.* at 674. The defendants admit that they did not comply with the statute's notice requirement and do not contend that the medical records were admissible under that statute.

■ Certainly, with a proper foundation, the medical records could have been admitted pursuant to the business records exception to the hearsay rule, Rule 803(6) of the Rhode Island Rules of Evidence.[6] *State v. Belanger,* 792 A.2d 60, 64 (R.I. 2002) (per curiam) (holding medical expert was properly cross-examined on data in a medical report because the type of report fell within Rule 803(6) and contained "the type of data that normally would be relied upon by the witness"). Records admitted under Rule 803(6) must be authenticated

---

the physician or dentist; the opinion of the physician or dentist as to proximate cause of the condition so diagnosed, and the opinion of the physician or dentist as to disability or incapacity, if any, proximately resulting from the condition so diagnosed; and, provided, further, that *written notice of the intention to offer the bill or report as such evidence, together with a copy thereof, has been given to the opposing party or parties, or to his or her or their attorneys, by mailing the notice by certified mail, return receipt requested, not less than ten (10) days before the introduction of the bill or report into evidence, and that an affidavit of the notice and the return receipt is filed with the clerk of the court forthwith after the receipt has been returned."* (Emphasis added.)

6. Rule 803(6) of the Rhode Island Rules of Evidence provides in pertinent part:

"**Hearsay exceptions; availability of declarant immaterial.**—The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (6) *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." (Emphasis added.)

through the testimony of the custodian of records or some "other qualified witness." It is well settled that "[a] fundamental prerequisite to the admission of any business record is an adequate foundation." *State v. Carrera*, 528 A.2d 331, 335 (R.I. 1987) (holding record inadmissible because there was no testimony about the making of the record). The plaintiff had no personal knowledge of the making and keeping of the medical records and, therefore, was not a competent witness to authenticate them. Without authentication, the records are not admissible under Rule 803(6). Consequently, we hold that the trial justice committed an error of law.

### Conclusion

In conclusion, standing alone the admission of the unauthenticated medical records or the exclusion of the collision photographs may have been harmless error. However, we are satisfied that the cumulative effect of these evidentiary rulings was so prejudicial as to constitute reversible error. Viewed in their entirety, the erroneous rulings worked an injustice upon the plaintiff sufficient to warrant a new trial. Because we vacate the judgment and order a new trial, we need not pass upon the plaintiff's third assignment of error, the denial of his motion for an additur or new trial.

Accordingly, for the reasons stated herein, we sustain the plaintiff's appeal, vacate the judgment of the Superior Court, and remand this case for a new trial.