**STATE**

v.

**Miles E. GRIFFIN.**

No. 95–617–C.A.

Supreme Court of Rhode Island.

March 20, 1997.

---

Aaron L. Weisman, Andrea J. Mendes, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

**OPINION**

FLANDERS, Justice.

The defendant, Miles Griffin (Griffin), challenges the firearms and handwriting expertise that helped to seal his fate as a convicted murderer. Having considered his contentions and perused the trial record, we decline to disturb the Superior Court judgment that entered upon the jury's guilty verdict.

A house party in South Providence, a senseless shooting, and a bullet hole in a dead man's eye—this was the factual trident that pinned Griffin to the murder. The evidence against him was strong. According to witnesses, a fellow partygoer made the mistake of asking Griffin if he "had any static or whatever." Griffin said no but apparently took mortal offense at this query. In a flash he spun around, drew a .38 caliber revolver from his waistband, stuck it about a foot from his interrogator's eye, and fired away. Some of Griffin's compeers later heard him crow about the killing. One of them also saw him plying a screwdriver to pry a .357 Magnum shell from his pistol. A firearms expert testified that some .38 revolvers (Specials but not Smith & Wessons) can be modified to fire .357 bullets. A handwriting analyst also opined that while awaiting trial, Griffin penned a menacing missive to a key prosecution witness. Hearing this and other evidence, a Superior Court jury convicted Griffin of second-degree murder and possessing

a firearm while committing a violent crime. Wielding Ockham's razor,[1] we cut directly to the heart of this appeal.

Griffin first questions the propriety of admitting expert testimony concerning how some .38 pistols can be modified to fire .357 bullets. He complains that the expert's comments here were excludable guesswork. Specifically, he contends that, because the police failed to find the shooter's revolver, the expert had no way of knowing whether the weapon was a .38 Special (and therefore adaptable) or a .38 Smith & Wesson (and therefore immutable).

■ Trial justices have wide discretion in connection with the admission of expert testimony. *See, e.g., State v. Bryant,* 670 A.2d 776, 781 (R.I.1996) (discussing R.I. R. Evid. 702). As evidentiary gatekeepers they must first be persuaded that sufficient foundational facts have been adduced to remove the expert's proffered opinions from the realm of speculation. *See, e.g., State v. Boucher,* 542 A.2d 236, 239–40 (R.I.1988). But in the end their rulings will not be disturbed unless they are clearly erroneous. *See, e.g., State v. Ferola,* 534 A.2d 173, 176 (R.I.1987).

■ Viewed against this legal backdrop, the trial justice's decision easily passes muster. Griffin's buddies heard him bragging about having "shot this cat at a party," adding that "[h]is eye came out, too." One even saw him jam a .357 bullet into his .38 revolver before the South Providence shooting and another later spied him trying to jimmy the empty shell from his gun. This factual predicate provided all the foundation needed for the expert's testimony. He simply and quite properly explained to the jury how what the witnesses say they saw concerning Griffin's behavior with his gun *could* have occurred in a manner that would be consistent with the type of gun the state alleged Griffin was packing and the type of bullet used in the killing. The jury still had to decide whether to believe what these witnesses say they saw. And since the prosecution's questions were fairly framed so as not to mislead the jury,

the trial justice's admission of this evidence cannot be faulted.

■ Griffin also assigns error to the admission of the handwriting analyst's testimony. The expert's conclusions regarding authorship of the witness-threatening letter were based on a comparison of that document with the writing on (1) certain waiver-of-rights forms known to have been inked by Griffin and (2) a pretrial epistle Griffin supposedly sent to the warden. In a nutshell Griffin insists that he did not author the document addressed to the warden and that the handwriting on the waiver-of-rights forms was by itself insufficient to link him to the minatory witness billet.

■ "[A]s a condition precedent to admissibility," evidence must be authenticated by facts "sufficient to support a finding that the matter in question is what its proponent claims" it to be. R.I. R. Evid. 901(a). In making Rule 901 determinations, trial justices must decide whether there is enough support in the record to conclude that it is "reasonably probable" that the evidence is what its offeror proclaims it to be. *See State v. Ducharme,* 601 A.2d 937, 944 (R.I.1991). If so, then the evidence's suasive force is for the jury to decide. *See State v. Bertram,* 591 A.2d 14, 25 (R.I.1991). We critique Rule 901 rulings for abuse of discretion. *See Peters v. Jim Walter Door Sales of Tampa, Inc.,* 525 A.2d 46, 48 (R.I.1987).

Comparing the handwriting in the warden's letter to the script on the waiver-of-rights forms, the expert found multiple points of agreement. He then explained how the writing on the admonitory witness communiqué compared to that on those documents. His testimony limned the idiosyncrasies of Griffin's penmanship, noted a number of significant comparable features, and concluded that Griffin was the author of the witness-threatening letter. In this court, as below, Griffin tries to undercut this opinion by identifying a host of perceived cracks in the expert's authentication edifice. But his arguments go to the weight of the expert's

---

**1.** An eponymous "principle of parsimony" taking its name from William of Ockham, a fourteenth century Franciscan philosopher who prized economy of explanation, Ockham's razor slices away surplusage. *See* 8 The Encyclopedia of Philosophy 306–07 (1967).

remarks, not to their admissibility. *Cf. Bertram*, 591 A.2d at 25 (defense counsel "had ample opportunity to cross-examine [the handwriting expert] on his conclusions and emphasize any infirmities pertaining to his analysis" of the disputed documents, and the jury was free to "decide what weight, if any, should be accorded to the testimony"). In brief, we see no basis for Griffin's suggestion that the trial justice flouted Rule 901.

Discerning no reversible error, we therefore deny and dismiss Griffin's appeal, affirm the judgment of conviction, and remand the papers in this case to the Superior Court.