DECISION RE: KNOWN FAILURE MODES AND EFFECTS ANALYSIS
Before this Court is a motion in limine, filed by Ford Motor Company ("Ford"), by which Ford seeks an order excluding a document, entitled "KNOWN FAILURE MODE AND EFFECTS ANALYSIS" ("KFMEA"),[1] from evidence in the underlying products liability action and prohibiting reference to the document at trial. Carol Dodson ("Dodson"), in her capacity as executrix of the estates of the late Cecil and Doris Dodson ("the Dodsons"), objects to the motion and has filed a memorandum in support of her objection. The motion was argued before this Court on September 4, 2004.
 I. The KFMEA
Attached to Ford's motion is a two-page document, entitled "KNOWN FAILURE MODE AND EFFECTS ANALYSIS." The first page of the document is marked "ING5 3476," and the second page is marked "ING5 3477." "Page 2 of 3" appears on the first page of the document, and "Page 3 of 3" appears on the second. No document labeled "Page 1 of 3" is attached to Ford's motion.
This Court has undertaken a thorough review of Dodson's proposed trial exhibits[2] and determined that three of the proposed exhibits include documents entitled "KNOWN FAILURE MODE AND EFFECTS ANALYSIS." None of these documents exactly matches the two-page document attached to Ford's motion, however.
Dodson's proposed trial Exhibits 4 and 4a, presented to Paul Laskowski ("Laskowski") during his videotaped trial testimony in the underlying products liability action, are both listed in the index to Dodson's proposed trial exhibits as "Known Failure Mode and Effects Analysis (ING3 0826-0828)." These two exhibits are identical documents, extremely similar to, but not the same as, the document attached to Ford's motion.
Exhibits 4 and 4a, unlike the document attached to Ford's motion, are three page documents. A page marked "Page 1 of 3," which was not included with the document attached to Ford's motion, is included in both exhibits. Also, the page marked "Page 3 of 3" in the document attached to Ford's motion is, in Exhibits 4 and 4a, marked "Page ____ of 3." In addition, information not found on the document attached to Ford's motion appears at the bottom of "Page 2 of 3" in Exhibits 4 and 4a. Finally, whereas "Page 2 of 3" and "Page 3 of 3" in the document attached to Ford's motion are marked "ING5 3476" and "ING5 3477," respectively, the pages marked "Page 1 of 3," "Page 2 of 3," and "Page ____ of 3" in Exhibits 4 and 4a are marked "ING3 0826," "ING3 0827," and "ING3 0828," and each of the three pages is labeled "PRODUCED BY FORD."
Two documents bearing the title "KNOWN FAILURE MODE AND EFFECTS ANALYSIS" are included in Exhibit 243 of Dodson's proposed trial exhibits. Exhibit 243 corresponds to Exhibit 48 of the deposition of Dr. Myron Kayton ("Kayton"), one of Dodson's expert witnesses. In the index to Dodson's proposed trial exhibits, Exhibit 243 is listed as a "Book of Ford documents." A page similar to the page marked "Page 1 of 3" in Exhibits 4 and 4a is included in part seven of Exhibit 243, labeled "Memorandum from State Farm to NHTSA, and Ford's Response, with Exhibits (Re: Minlon cases/recall), and Ford document prepared for legal counsel." "Page 1 of 3" in Exhibit 243(7) contains identical information to the corresponding page in Exhibits 4 and 4a. In Exhibit 243(7), however, "Page 1 of 3" is labeled "Best Available Copy" and is not marked "PRODUCED BY FORD." Furthermore, the numbers "004904" and "100464" appear on the document instead of "ING3 0826."
Part ten of Exhibit 243, labeled "Three page document, entitled "Known Failure Mode and Effects Analysis," is nearly identical to Exhibits 4 and 4a. Unlike Exhibits 4 and 4a, however, Exhibit 243(10) is not marked "PRODUCED BY FORD." Also, whereas the three pages of Exhibits 4 and 4a are marked "ING3 8026," "ING3 8027," and "ING3 8028," respectively, the three pages of Exhibit 243(10) are marked with the numbers "004904 100464," "004905 100465," and "004906 100466." In addition, "Best Available Copy" appears on the page marked "Page 1 of 3" in Exhibit 243(10), only, and Exhibit 243(10), unlike Exhibits 4 and 4a, is marked with unidentified handwriting.
Although none of the proposed trial exhibits are identical to the two-page document attached to Ford's motion, Dodson refers to all of them as "Known Failure Mode and Effects Analysis" and makes no effort to differentiate among the various versions. (See Laskowski Test. 148:12-153:15, Oct. 15, 2004.) Rather, Dodson asserts that these documents, with and without the information added to proposed trial Exhibits 4 and 4a, were created, originally, by Eugene Cuneo ("Cuneo") while employed as an engineer at Ford, and that these documents serve roughly the same purpose in the underlying products liability action. (See
Dodson's Objection and Supp. Mem. to Def.'s Mot. In Limine to Exclude Docs. Entitled "Known Failure Modes (sic) Effects Analysis 2-9 [hereinafter Dodson's Objection]; Pl.'s Resps. to Def.'s Objections to Exs. Offered into Evidence During the Videotaped Tr. Test. of Paul Laskowski 6 [hereinafter Pl.'s Resps. Laskowski].) Accordingly, this Court will address the parties' arguments relative to Ford's motion as well as Ford's objections to the various iterations of the KFMEA in Dodson's proposed trial exhibits and Dodson's responses thereto.
 II. The Arguments
In the underlying products liability action, Dodson seeks damages from Ford, alleging, inter alia, that the Dodsons' 1982 Ford Crown Victoria was defectively designed and manufactured. (Dodson's Fourth Am. Compl. 3-4.) Dodson alleges that Ford's defective design and manufacture of the vehicle caused the vehicle to catch fire, which, in turn, caused the Dodsons' house to catch fire. Dodson alleges that, as a result of the fire, Cecil Dodson sustained serious injury and Doris Dodson died. (Id. at 4.)
Dodson asserts that the KFMEA reveals that Ford had encountered problems with the type of ignition switch originally installed in the Dodson vehicle. Dodson argues that, based on the KFMEA, Ford was aware of a recommendation that "minimum air gap dimensions" be added to the switch to prevent "phenolic burning." (Dodson's Objection 6.) Dodson alleges that, despite Ford's awareness of this recommendation, the minimum air gap dimensions in the switch were not maintained,[3] that the ignition switch installed in the Dodson vehicle was, therefore, defective, and that the defective switch caused the vehicle to catch fire.
In its motion, Ford lists three reasons for the exclusion of the KFMEA. First, Ford argues that the KFMEA is irrelevant because the switch that was tested and referred to in the KFMEA was designed and manufactured differently than the switch assembled with the 1982 Crown Victoria. Second, Ford argues that the KFMEA is irrelevant because Dodson "cannot establish that any of the manufacturing problems and conditions described in the switches referred to in the document were present in the switch assembled with the 1982 Crown Victoria." (Ford's Mot. 1.) Third, Ford argues that the probative value of the KFMEA is "outweighed by the unfair prejudice to Ford and the jury's confusion that would result" if this evidence were presented to the jury. (Id.
at 1-2.)
At oral argument, Ford added that the documents were irrelevant because the switch in the KFMEA was a rejected prototype that was never installed in any Ford vehicles. And, in its objection to Dodson's proposed trial exhibits, Ford objects to Exhibits 4, 4a, and 243 on the additional grounds of foundation, authentication, hearsay, hearsay within hearsay, and R.I.R. Evid. 404, 608, and 803(8).
 ANALYSIS I. Relevance and the Rule 403 Balancing Test
Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As noted, Ford, in its motion, argues that the KFMEA is irrelevant. The only support Ford provides for its argument is a two-page affidavit from Cuneo in which Cuneo states that "[t]he E2AC ignition switch assembled with Ford's 1982 Crown Victoria was manufactured and designed differently than the failed switches." (Cuneo Aff. 2.)
This Court finds Ford's argument unpersuasive. Cuneo's affidavit does not indicate precisely how the failed switches and the switch originally installed in the Dodson vehicle differ. Ford's argument, therefore, relies on the assumption that any design or manufacturing difference between the failed switches and the switch originally installed in the Dodson vehicle renders the KFMEA irrelevant. Dodson argues, however, that changes to the failed switch were proposed but not maintained in subsequent switches, including the switch originally installed in the Dodson vehicle. Therefore, Cuneo's bald statement that the ignition switches were designed and manufactured differently does not render the KFMEA irrelevant. By extension, Dodson's alleged inability to establish that the "manufacturing problems and conditions described in the switches referred to in the [KFMEA] were present in the switch assembled with the 1982 Crown Victora," does not render the KFMEA irrelevant. Likewise, Ford's allegation that the switch in the KFMEA was a rejected prototype that was never installed in Ford vehicles does not negate the KFMEA's relevance.
This Court is satisfied that the KFMEA is relevant as tending to show that Ford had encountered problems with the type of ignition switch originally installed in the Dodson vehicle and that Ford was aware of a recommendation that "minimum air gap dimensions" be added to the switch to prevent "phenolic burning." In addition, this Court has reviewed the record and found no basis to support a conclusion that the probative value of the KFMEA "is outweighed by the unfair prejudice to Ford and the jury's confusion that would result if this evidence is presented to the jury." In Rhode Island, it is well-settled that "[t]he determination of the value of evidence should normally be placed in the control of the party who offers it." Boscia v. Sharples,860 A.2d 674, 678 (quoting Wells v. Uvex Winter Optical, Inc.,635 A.2d 1188, 1193 (R.I. 1994)). And, "[u]nless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." Id. This Court is satisfied that the KFMEA is of more than marginal relevance and that, though it is, indeed, prejudicial to Ford, it is not unfairly so. Accordingly, Ford's motion in limine to exclude the KFMEA is denied.
 II. Hearsay
As noted, in its objection to Dodson's proposed trial exhibits, Ford objects to Exhibits 4, 4a, and 243 on the additional grounds of foundation, authentication, hearsay, hearsay within hearsay, and R.I.R. Evid. 404, 608, and 803(8). This Court first considers Ford's hearsay objections.
A. Rule 801(d)(2)
In her memorandum in opposition to Ford's objections to exhibits offered into evidence during the videotaped trial testimony of Paul Laskowski, Dodson asserts that certain exhibits, including Exhibits 4 and 4a, are not hearsay, under R.I.R. Evid. 801(d)(2). Rule 801(d)(2) provides that
 [a] statement is not hearsay if . . . [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
Here, Dodson seeks to offer Exhibits 4, 4a, 243(7), and 243(10) against Ford, the party-opponent. These exhibits, therefore, are admissible nonhearsay statements, provided that they are statements of a party-opponent, as defined in Rule 801(d)(2).
In her memorandum in opposition to Ford's objections to the Laskowski exhibits, Dodson argues that certain exhibits are admissible under Rule 801(d)(2) because they are referenced in another Ford document, entitled "Ignition Switch Collection Log."[4] The Ignition Switch Collection Log is a catalog of Ford documents, compiled by Ford "after a duly diligent and extensive search for documents relating to the ignition switch assembly that was incorporated into the 1984-93 passenger car and light trucks." (Ford's Supplemental Resp. to Dodson's Eighth Req. for Produc. of Docs. hereinafter Ford's Supp. Resp.].) Each document in the Ignition Switch Collection Log has been assigned an "ING" number, and the documents are grouped according to that number. Exhibits 4 and 4a, which are stamped "ING3 0826," "ING3 0827," and "ING3 0828," are referenced in the Ignition Switch Collection Log. Likewise, the two-page document attached to Ford's motion, stamped "ING5 3476" and "ING5 3477," is referenced in the Ignition Switch Collection Log. On the other hand, Exhibits 243(7) and 243(10), because they have not been assigned an "ING" number, are not referenced in the Ignition Switch Collection Log. Thus, of the various exhibits featuring versions of the KFMEA, only Exhibits 4 and 4a could possibly be shown to be admissible under Rule 801(d)(2) because they are referenced in the Ignition Switch Collection Log.
Dodson argues that because each document in the Ignition Switch Collection Log is listed with a corresponding "SOURCE" and "DEPARTMENT," the Ignition Switch Collection Log illustrates a "demonstrable nexus of people and departments to the investigation and discussion of ignition switch issues," which, Dodson argues, establishes that "[e]ach document was written by one or more Ford employees," that "[f]or the employees represented on each documents [sic], the ignition switch issues that appear on the face of each document are within the scope of their employment," and that "[e]ach document was made during the scope of one or more employee's employment." (Dodson's Mem. In Opposition to Ford's Objections to the Laskowski Exs. 13-14 [hereinafter Dodson's Mem. re: Laskowski Exs.].) Accordingly, Dodson argues that the Ignition Switch Collection Log establishes that exhibits such as Exhibits 4 and 4a, which are referenced in the Ignition Switch Collection Log, are statements by the party-opponent, as defined in Rule 801(d)(2).[5]
Based on Ford's explanation of the Ignition Switch Collection Log, this Court is persuaded that, because Exhibits 4 and 4a are referenced in the Ignition Switch Collection Log, Dodson has established the authenticity of the documents. Rule 901 of the Rhode Island Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence to support a finding that the matter in question is what its proponent claims." In more specific terms, "the proffering party must identify the exhibit by showing that the information it contains or otherwise reveals is relevant to the pertinent factual issues," which means that
 a document that appears to contain relevant information is inadmissible unless the proffering party shows that the document is somehow related to the dispute before the court, as, for example, by showing that it is a record generated by a party and that it concerns transactions at issue in the litigation.
Weinstein's Federal Evidence § 901.02 (2nd ed. 2002). The Rhode Island Supreme Court has held that "[i]n making Rule 901 determinations, trial justices must decide whether there is enough support in the record to conclude that it is `reasonably probable' that the evidence is what its offeror proclaims it to be." State v. Oliveira, 774 A.2d 893, 926 (R.I. 2001) (quotingState v. Griffin, 691 A.2d 556, 558 (R.I. 1997)). This Court is satisfied that Exhibits 4 and 4a are documents from Ford's Ignition Switch Collection, pertaining to the ignition switch assembly installed in Ford passenger cars and light trucks between 1984 and 1993.
As Dodson correctly notes in her memorandum in opposition to Ford's objections to the exhibits offered into evidence by Dodson during Laskowski's trial testimony, however, "the foundation for non-hearsay statements by an agent of a party-opponent pursuant to Rule 801(d)(2)(D) requires more specific proof than that for authentication under Rule 901." (Dodson's Mem. re: Laskowski Exs. 11.) That Dodson has established the authenticity of Exhibits 4 and 4a does not mean that Dodson has established the admissibility of the documents under Rule 801(d)(2). Indeed, this Court finds that Dodson has failed to establish that any version of the KFMEA is admissible under Rule 801(d)(2), because Dodson has failed to establish that any version of the KFMEA was authored by a Ford employee within the scope of his or her employment during the period of such relationship.
In Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 93
(R.I. 1992), the Rhode Island Supreme Court held that the party introducing documents into evidence bears the burden of laying a proper foundation. "Paramount to this requirement," the court explained, "is the identification of the declarant." Id. In her objection, Dodson asserts that the KFMEA was prepared by Cuneo, who worked for Ford as an engineer for nearly thirty years between 1968 and 1997. To lay a proper foundation for Exhibits 4, 4a, 243(7) and 243(10), therefore, Dodson must establish that Cuneo authored the KFMEA and that Cuneo had Ford's permission to speak on its behalf or that Cuneo was Ford's representative and that Cuneo authored the KFMEA within the scope of his employment during the period of such relationship. R.I.R. Evid. 801(d)(2)(C)-(D); see also John A. Tarantino, Trial EvidenceFoundations § 633 (2002).
To support her assertion that Cuneo authored the KFMEA, Dodson relies on the transcript of Cuneo's February 8, 2002 deposition. (See Dodson's Objection 2.) In his deposition, Cuneo, indeed, states that he authored an FMEA in 1978 to document unique "production validation failures" and the recommended action that was taken. (Cuneo Dep. 124:9-126:8, Feb. 28, 2002.) Later in his deposition, Cuneo is shown the three-page document "Bates stamped ING3-0826, 7, and 8," — Exhibits 4 and 4a — and Cuneo acknowledges that it appears to be the one he reviewed in preparation for the deposition. (Id. at 138:25-139:2.) Cuneo, however, could not account for certain information within the document that appeared to have been added fourteen years after its creation. (See id. at 175:3-177:8.) Thus, Cuneo's deposition could only show that Cuneo authored part of Exhibits 4 and 4a. Regardless, according to R.I.R. Evid. 804, Cuneo's deposition is inadmissible unless Cuneo is "unavailable as a witness."[6] Because Dodson has not shown in connection with these pretrial motions that Cuneo is "unavailable as a witness," Dodson cannot rely on Cuneo's deposition to establish the necessary foundation for admission of any version of the KFMEA under R.I.R. Evid. 801(d)(2).
Dodson presented Exhibits 4 and 4a to Laskowski during his videotaped trial testimony. This Court, therefore, looked to the transcript of Laskowski's testimony to determine whether Dodson established the necessary foundation for the admission of Exhibits 4 and 4a without reference to Cuneo's deposition testimony. This Court finds that Dodson did not.
At the point in Laskowski's testimony when Exhibit 4 is presented to him, Dodson's counsel states, "Now let me show you what I've marked as Exhibit 4, which is a copy of that document you've referred to, the known FAILURE MODE AND EFFECTS ANALYSIS." (Laskowski Tr. Test. 148:12-148:15.) After reviewing Exhibit 4, Laskowski remarks, "I don't believe this is Mr. Cuneo's known FMEA. . . . There's something added to this one." (Id. at 148:25-149:3.) Likewise, when Exhibit 4a is presented to Laskowski, Laskowski remarks that he does not believe that the document is the known failure mode and effects analysis that Mr. Cuneo put together. (Id. at 151: 20-151:24.) Laskowski, therefore, cannot establish that Cuneo authored Exhibits 4 and 4a. Because Laskowski cannot identify the declarant, this Court finds that Exhibits 4, 4a, 243(7) and 243(10) lack the necessary foundation for admission under R.I.R. Evid. 801(d)(2)(C) and (D). Consequently, no version of the KFMEA is admissible under Rule 801(d)(2). Accordingly, any reference to the KFMEA must be stricken from Laskowski's videotaped trial testimony.
B. Rule 803(8)
In Ford's objections to Dodson's proposed trial exhibits, Ford broadly argues that Dodson's proposed trial exhibits, apparently including the various iterations of the KFMEA, do not fall within the hearsay exception carved out by Rule 803(8) of the Rhode Island Rules of Evidence. Rule 803(8) provides that certain "[r]ecords, reports, statements, [and] data compilations . . . of public offices or agencies" are not excluded by the hearsay rule, even though the declarant is available as a witness. Dodson, however, does not argue that the various iterations of the KFMEA are admissible under Rule 803(8). Dodson asserts that the various iterations of the KFMEA are attributable to Ford, not a public office or agency. Rule 803(8), therefore, does not apply.
 III. Authenticity
Based on Ford's explanation of the Ignition Switch Collection Log, this Court has already determined that Dodson has established the authenticity of Exhibits 4 and 4a by reference to the Ignition Switch Collection Log. Furthermore, because the two-page document attached to Ford's motion is also referenced in the Ignition Switch Collection Log, this Court finds that the authenticity of that document, too, has been established. On the other hand, this Court finds that because Exhibits 243(7) and 243(10) are not referenced in the Ignition Switch Collection Log, Dodson has failed to establish the authenticity of Exhibits 243(7) and 243(10).
Dodson seeks to admit Exhibits 243(7) and 243(10) through the testimony of its expert, Kayton, but Kayton cannot authenticate the exhibits because Kayton's knowledge of who created the KFMEA, when and why it was created, and how the testing memorialized in the document was conducted and recorded is limited to what he learned from Cuneo's deposition testimony. Kayton's understanding of the exhibits is based, primarily, on speculation and interpretation, and his testimony, as an expert, is, by nature, more opinion than indisputable fact. (See Kayton Dep. 284:11-285:22, 343:12-348:9.) Kayton's testimony, therefore, cannot satisfy this Court that it is "reasonably probable" that Exhibits 243(7) and 243(10) are what Dodson proclaims them to be.
Dodson argues, without citing to any authority, that Exhibits 243(7) and 243(10) are "authenticated on their face [sic]." Dodson argues that Ford's "custody and control" of the documents, "as evidenced by Ford's production of them to the Plaintiff and the stamp on each "PRODUCED BY FORD," authenticates the proposed trial exhibits. (Dodson's Resps. Laskowski 2.) Exhibits 243(7) and 243(10), however, are not stamped "PRODUCED BY FORD," and Ford has made clear that it does not admit that any of Dodson's proposed trial exhibits are Ford documents. (See Ford's Objections to Dodson's Proposed Tr. Exs. 3.) This Court has undertaken a comprehensive search of the record for evidence to support Dodson's assertions and found none. Dodson fails to provide sufficient evidence to support a finding that Exhibits 243(7) and 243(10) are what Dodson proclaims them to be. Dodson, therefore, has not authenticated Exhibits 243(7) and 243(10). Accordingly, Exhibits 243(7) and 243(10) are inadmissible under Rule 901.
 III. R.I.R. Evid. 404 and 608
In Ford's objections to Dodson's proposed trial exhibits, Ford also argues that Dodson's proposed trial exhibits are inadmissible under R.I.R. Evid. 404 and 608. Rule 608, entitled "Evidence of Character and Conduct of Witness," governs the admissibility of "opinion and reputation evidence of character" and "specific instances of conduct" for the purpose of "attacking or supporting [a] witness' credibility." It does not appear to this Court, however, that Dodson seeks to introduce the various iterations of the KFMEA for the purpose of attacking a witness' credibility.
Dodson argues that the KFMEA reveals that Ford had encountered problems with the type of ignition switch originally installed in the Dodson vehicle. Dodson argues that, based on the KFMEA, Ford was aware of a recommendation that "minimum air gap dimensions" be added to the switch to prevent "phenolic burning." (Dodson's Objection 6.) Dodson alleges that, despite Ford's awareness of this recommendation, the minimum air gap dimensions in the switch were not maintained, that the ignition switch installed in the Dodson vehicle was, therefore, defective, and that the defective switch caused the vehicle to catch fire. Dodson, therefore, seeks to introduce the KFMEA to show that "Ford knew that the ignition switch in the Dodson's car was defective and, in spite of that knowledge, Ford failed to fix it or warn of the defect before the Dodson's car caught fire." (Dodson's Mem. re: Laskowski Exs. 19.) Accordingly, Rule 608 does not apply.
Rule 404 provides, in relevant part, that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent harm and that the fear was reasonable.
As noted, however, Dodson seeks to introduce the KFMEA to show that "Ford knew that the ignition switch in the Dodson's car was defective and, in spite of that knowledge, Ford failed to fix it or warn of the defect before the Dodson's car caught fire." (Id.) Dodson, therefore, is not using evidence of other acts to prove Ford's character in order to show that Ford acted in conformity therewith. Ford's argument that the KFMEA is inadmissible under Rule 404, therefore, fails.
 CONCLUSION
This Court finds that though Ford's other arguments for the exclusion of the various iterations of the KFMEA fail, Dodson has failed to establish the requisite foundation for admission of any version of the KFMEA under any exceptions to the hearsay rule. This Court concludes, therefore, that the various iterations of the KFMEA are inadmissible hearsay and that, to the extent that Dodson seeks to admit the documents without curing the hearsay problem, the documents must be excluded from evidence in the underlying products liability action.[7]
[1] In its motion, Ford incorrectly titles the document "Known Failure Modes Effects Analysis." (Ford's Mot. In Limine to Exclude Document Entitled "Known Failure Modes Effects Analysis" 1 [hereinafter Ford's Mot.])
[2] Due to the high volume of documents in the underlying products liability action, this Court requested and received copies of the parties' proposed trial exhibits and their corresponding objections and responses thereto.
[3] Dodson relies on a collection of documents, described as the "Gap Width Charts and Survey," to support her claim that minimum air gap dimensions in the type of ignition switch originally installed in the Dodson vehicle were not maintained. (See Dodson's Objection 8.) This collection of documents is subject of a separate motion in limine.
[4] Each of the seventeen pages is marked "PRODUCED BY FORD."
[5] Because the two-page document attached to Ford's motion is also referenced in the Ignition Switch Collection Log, it may be inferred that Dodson would argue that the document represents statements by the party-opponent, as defined in Rule 801(d)(2).
[6] Under Rule 804, "former testimony," including "a deposition taken in compliance with the law in the course of the same or another proceeding," is "not excluded by the hearsay rule if the declarant is unavailable as a witness." Rule 804 defines "unavailability" as including:
 situations in which the declarant (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical condition or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.
"A declarant," however, "is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying." R.I.R. Evid. 804.
[7] In its motion, Ford puts forth a double hearsay argument, alleging that the documents are "hearsay within hearsay." (Ford's Mot. 1.) Because this Court has determined that the documents are inadmissible hearsay, this Court declines to address Ford's double hearsay argument at this time.