May 18, 2018

**Supreme Court**

No. 2017-173-C.A.

(W1/13-151A)

State                           :

    v.                          :

Joshua Rathbun.                 :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                              :

Joshua Rathbun.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on December 7, 2017, on appeal by the defendant, Joshua Rathbun (defendant), from a Superior Court judgment of conviction on two counts of first-degree child molestation sexual assault involving his biological daughter.  The defendant received two concurrent forty-year sentences, with twenty-five years to serve and the remainder suspended with probation.

Before this Court, defendant argues that the trial justice erred by: (1) admitting the testimony of Natalie Kissoon, M.D., which he contends amounted to improper bolstering that was admitted without proper foundation; (2) refusing to grant defendant's motion to pass the case; and (3) denying defendant's motion for a new trial based upon newly discovered evidence. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

The defendant and his ex-wife, Michele Rathbun (Michele), were living together at the time the couple's first child, Megan,[1] was born on May 21, 1999.  The couple married in 2002,

---

[1] We will utilize a pseudonym in referring to the complaining witness, who, at the time of these proceedings, was a minor.

had a second child on November 11, 2003, and divorced in November 2004. After their second child was born, Michele was employed at a bank and worked longer hours than defendant, which necessitated defendant picking up the children at preschool, bathing them, feeding them, and putting them to bed. After the couple divorced in 2004, Michele began a relationship with Gary Benevides (Gary), who became a father figure to her children and lived in the home with Michele and the children. Similarly, defendant began dating and eventually married Desiree Tasca; he resided at his father's house, which was a short distance from Michele's home.

In 2006, when Megan was approximately six or seven years old, defendant and Desiree moved to Utah. The defendant and Desiree subsequently had two children together; and, according to Michelle, upon learning of this, Megan reacted "[w]ith excitement" and she "liked the fact [that] she had" younger siblings. Although Megan never traveled to Utah to visit defendant, they remained in contact over the telephone and occasionally over video chat.

In 2012, Desiree and her two children visited Michele and her family. During this visit, Desiree and Michele had a discussion in which Desiree stated that her oldest daughter was very similar to Megan in the sense that she was "extremely quiet and introverted[.]" Around the same time, in 2012, Michele began noticing a change in Megan that was concerning. She observed cuts on Megan's legs that she described as "just cuts * * * just slices, scratches, cuts * * * they were just lines." Megan's behavior worsened after Desiree's visit; and according to her mother, she became "[v]ery introverted, quiet, depressed * * * unhappy[,]" and her cuts "became more obvious." When Michele confronted Megan with bloodied tissues, scissors, razor blades, and tacks that she had found in Megan's room, Megan initially denied that she was cutting herself but eventually disclosed that she was harming herself because, according to Michele, "she did not like herself, that she thought she was ugly and disgusting, that she hated herself." Michele

took Megan to her pediatrician, Russell Stokes, M.D., who referred Megan to a therapist, Clare Sartori.

Shortly thereafter, Michele found a notebook in Megan's room with the words "I'm broken" written repeatedly on every page. Michele confronted her daughter and asked her, "Why are you so broken?" At this point, according to Michele, Megan stated that "her father had hurt her" and that "[m]y father touched me." Megan further revealed to her mother that her father sodomized her and performed oral sex on her. In light of these allegations, Michele visited Megan's therapist, contacted the Department of Children, Youth and Families (DCYF), and sat for an interview with the Rhode Island State Police. Megan underwent a physical exam at Hasbro Children's Hospital, performed by Dr. Kissoon, a fellow in child-abuse pediatrics. Megan also underwent interviews by DCYF, the State Police, and a forensic psychologist.

On March 22, 2013, defendant was indicted by a grand jury on two counts of first-degree child molestation sexual assault, in violation of G.L. 1956 § 11-37-8.1.[2] At trial, the state presented Michele, Gary, Dr. Kissoon, and Megan as witnesses. Michele testified in depth about Megan's revelations. She testified that Megan told her "[t]hat her father had * * * put his penis in her butt and that her father had put his mouth on her private part * * * and had touched her." Megan also testified at trial. She testified that, when she was younger and lived with defendant, he showered with her "almost every time." On one occasion in particular, when she was approximately four years old, Megan recalled defendant telling her to put her hands on the wall of the shower and subsequently sodomizing her. Megan testified with respect to another incident

---

[2] General Laws 1956 § 11-37-8.1 provides:

> "A person is guilty of first degree child molestation sexual assault
> if he or she engages in sexual penetration with a person fourteen
> (14) years of age or under."

that occurred after defendant and Michele had divorced and defendant had moved out of the family home. When Megan was seven years old, she visited defendant at her grandfather's home, where defendant was residing at the time. Megan awoke to the sound of defendant and Desiree fighting, and recalled Desiree telling her, "[Y]our dad and I were arguing. I'm going to put you in his bed." Sometime thereafter, defendant joined Megan in his bed and she was awakened again by "something very uncomfortable down * * * near [her] private parts." Megan attempted to stop the oral copulation by kicking defendant, to no avail.

Also at trial, Dr. Kissoon testified as an expert in child-abuse pediatrics. She testified that Megan was brought to the Child Protection Center at Hasbro Children's Hospital by her mother "due to concerns for sexual abuse." Pursuant to standard procedure, Dr. Kissoon performed a physical exam on Megan and did not discover anything abnormal with respect to Megan's physical condition. Doctor Kissoon testified that, "even when we know that there's been penetration, 90 to 95 percent of those children had a completely normal physical exam, including a normal genital exam." Finally, Dr. Kissoon stated that her final assessment in Megan's case was "[t]hat her disclosure was consistent with sexual abuse." At this point, defendant moved to strike Dr. Kissoon's statement pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure.[3] Defense counsel later, during Megan's testimony, further argued that the doctor's statement should be stricken because she had not reviewed Megan's school records or her pediatric medical records and had based her conclusion solely on what Michele had disclosed to her. The court allowed the statement in question to stand; however, on the following day, the court sustained the objection, striking Dr. Kissoon's statement "[t]hat her

---

[3] The defendant based his objection on the fact that his Rule 16 request for discovery and inspection had not been complied with because Dr. Kissoon's opinion was not included in the report defendant received.

disclosure was consistent with sexual abuse." Defense counsel then pressed his objection that Dr. Kissoon's testimony should be stricken in its entirety; the court refused to do so.

The defendant then moved for a mistrial, arguing that "the only corroboration of the victim's testimony in this case comes from the now stricken answer of the * * * [d]octor." The trial justice denied the motion for a mistrial because corroboration was not required:

> "[A]s we know, the statute for this type of offense specifically addresses the fact * * * that the testimony standing alone of the victim, if it constitutes proof beyond a reasonable doubt, is sufficient to support conviction without any corroborative or confirmatory evidence.
>
> "So for that reason and the other reasons stated earlier in the ruling on Dr. Kissoon's testimony, the [c]ourt will deny the Motion for Mistrial."

At the conclusion of the state's case, defendant moved for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure; the motion was denied.

As trial proceeded, defendant testified on his own behalf. He acknowledged that he often helped Megan with her shower and that he would "get the water running for her and * * * she'd get in and * * * do her little play thing in the shower, and then [he would] reach in from the outside and shampoo her head." When asked if he ever got into the shower with Megan without his clothes on or if he had sodomized her, defendant replied, "Absolutely not." The defendant further stated that he was not aware of Megan's abuse allegations until he received a phone call from her in August 2012.

On June 24, 2015, defendant was found guilty of two counts of first-degree child molestation sexual assault. Thereafter, defendant moved for a new trial based upon the newly discovered evidence that, after the trial, Michele filed a complaint seeking protection from

- 5 -

domestic abuse by Gary and obtained a restraining order against him.[4] It was defendant's argument that this newly discovered evidence would refute the state's contention at trial that, because Megan's home life had been stable, the only possible explanation for her self-harm was abuse by her father when she was a young child. The court denied defendant's motion for a new trial, and defendant timely appealed.

## Analysis

On appeal, defendant argues that: (1) the trial justice abused her discretion by refusing to strike the entire testimony of Dr. Kissoon for lack of foundation; (2) the trial justice abused her discretion by refusing to pass the case after Dr. Kissoon testified that Megan's disclosures were consistent with sexual abuse; and (3) the trial justice abused her discretion by refusing to grant defendant's second motion for a new trial on the basis of newly discovered evidence.

## The Motion to Strike

## Standard of Review

It is well settled that "[t]he admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion." *State v. Lynch*, 854 A.2d 1022, 1031 (R.I. 2004) (quoting *State v. Momplaisir*, 815 A.2d 65, 72 (R.I. 2003)). Moreover, "[t]rial justices have wide discretion in connection with the admission of expert testimony." *State v. Griffin*, 691 A.2d 556, 558 (R.I. 1997). This Court will not disturb a trial justice's evidentiary ruling unless that ruling was clearly erroneous. *See id.*

## Discussion

The defendant argues that Dr. Kissoon's testimony should have been stricken in its entirety because it was riddled with improper bolstering. The defendant further contends that

---

[4] The defendant had previously unsuccessfully moved for a new trial on the basis of the sufficiency of the evidence.

- 6 -

Dr. Kissoon's testimony served no purpose other than to bolster Megan's allegations. We are of the opinion that the trial justice considered Dr. Kissoon's testimony carefully and instructed the jury not to consider the doctor's statement "[t]hat [Megan's] disclosure was consistent with sexual abuse[,]" in light of this Court's holding in *State v. Watkins*, 92 A.3d 172 (R.I. 2014), in which we recognized our prior holding that repeated references to "sexual abuse recovery" and offering an opinion on a victim's truth or credibility constituted improper bolstering. *See Watkins*, 92 A.3d at 190 (quoting *State v. Haslam*, 663 A.2d 902, 906 (R.I. 1995)). This Court has held that a witness's "'opinion regarding the truthfulness or accuracy of another witness'[s] testimony' is considered to be impermissible 'bolstering' or 'vouching.'" *State v. Huffman*, 68 A.3d 558, 570 (R.I. 2013) (quoting *State v. Arroyo*, 844 A.2d 163, 169 (R.I. 2004)). Similar to the instant case, the expert witness in *Huffman* testified that the complainant's diagnosis was "consistent with 'acute penetrating vaginal trauma.'" *Id.* In *Huffman*, this Court was tasked with determining whether the expert witness's statement "ha[d] the same substantive import as bolstering[,]" *id.* (quoting *State v. Richardson*, 47 A.3d 305, 315 (R.I. 2012)); we determined that the testimony at issue "did not improperly vouch for or bolster" the testimony of the complainant because "it did not address—either directly or indirectly—the credibility or truthfulness of other fact witnesses." *Id.*; *see also Arroyo*, 844 A.2d at 169-70.

As we previously have articulated, trial justices have "wide discretion" to admit or exclude expert testimony. *See Griffin*, 691 A.2d at 558. It is incumbent upon a trial justice to determine the relevancy of expert testimony; "a trial justice must consider whether the testimony sought is relevant, within the witness's expertise, and based on an adequate factual foundation." *State v. Botelho*, 753 A.2d 343, 347 (R.I. 2000) (quoting *State v. Bettencourt*, 723 A.2d 1101, 1112 (R.I. 1999)). Once a trial justice is satisfied that the testimony in question is relevant,

within the witness's expertise, and is founded in fact, "the evidence generally ought to be admitted." *Id.*

In the case at bar, the trial justice was satisfied that the remainder of Dr. Kissoon's testimony—in which she merely recounted what she learned during Megan's evaluation—did not rise to the level of impermissible bolstering. *See Watkins*, 92 A.3d at 189-90; *Huffman*, 68 A.3d at 570. At the outset, the trial justice struck the potentially prejudicial portion of Dr. Kissoon's testimony from the record prior to ruling that the remainder of her testimony did not constitute improper bolstering. After scouring the record, we cannot point to a single instance in which Dr. Kissoon commented on "the truthfulness or credibility of [Megan]." *Huffman*, 68 A.3d at 570.

Before this Court, both parties address the effect of the stricken statement in light of the remainder of Dr. Kissoon's testimony. However, in addition to striking the prejudicial statement from the record, the trial justice also gave the jury a cautionary instruction:

> "I need to inform you that the [c]ourt has granted a motion to strike a very small portion of testimony furnished yesterday by Dr. Natalie Kissoon.
> "Members of the Jury, you must recognize that when a [c]ourt does strike evidence or testimony from the record, it's your solemn obligation, in accordance with your oath, not to utilize that evidence in any way or to refer to it or to speculate as to why it has vanished and been removed from the record. And I know it's, we call this process unringing a bell, and as difficult as that might seem, the rules are that you cannot consider it.
> "So I'm going to, you have to pretend that you never heard it basically. Okay. So the last two questions on direct examination that were posed to Dr. Natalie Kissoon are being stricken from the record. The questions are as follows: Question by the prosecutor, 'Were you able to make an assessment in [Megan's] case?' The answer of Dr. Kissoon was, 'Yes.' And the next and last question, 'What was your assessment?' Answer, 'That her disclosure was consistent with sexual abuse.' Those two questions, those two answers in their entirely are off the record. They are gone. You have to pretend that you never heard them, basically, and they

- 8 -

cannot formulate any part of your deliberations, conversations, or speculation."

This Court has held that "if the trial justice provides the jury with an adequate cautionary instruction, this Court assumes that the jury followed it unless 'some indication exists that the jury was unable to comply with the instruction.'" *State v. Dubois*, 36 A.3d 191, 197 (R.I. 2012) (quoting *State v. Barkmeyer*, 949 A.2d 984, 1007 (R.I. 2008)). The trial justice's cautionary instruction was more than sufficient, as she repeatedly iterated that the jury was forbidden to consider the stricken statements. Moreover, when considered in connection with Dr. Kissoon's remaining testimony that "[Megan's] physical exam was normal with the exception of an abrasion that she had on her chest, which she said occurred [when] she was removing * * * a temporary tattoo," and "[Megan] does not have any findings on physical exam indicating that she's been sexually abused[,]" we are satisfied that the potential for prejudice was eliminated. Further, the stricken testimony was not accusatory and did not implicate defendant.

We see nothing in the record to suggest that the trial justice abused her discretion in refusing to strike Dr. Kissoon's testimony. We note that defendant first alleged a Rule 16 discovery violation as the basis for the exclusion of the evidence; he later renewed his motion to strike the testimony. The trial justice carefully assessed Dr. Kissoon's testimony and the relevant caselaw, and instructed the jury not to consider that part of the testimony that the trial justice believed might be prejudicial to defendant. The trial justice found that Dr. Kissoon's testimony did not violate the standard set forth in *Watkins*, and stated that Dr. Kissoon's stricken statement did "not render [infirm] in any way * * * the rest of Dr. Kissoon's testimony * * * which [the trial justice] believe[d] ha[d] been proper[.]" *See Watkins*, 92 A.3d at 190. Accordingly, we hold that the trial justice did not abuse her discretion in refusing to strike Dr. Kissoon's testimony in its entirety.

- 9 -

**Motion to Pass**

**Standard of Review**

"It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *Dubois*, 36 A.3d at 197 (quoting *Barkmeyer*, 949 A.2d at 1007). This Court consistently has held that "the trial justice has a front row seat during the trial so that [he or she] can best evaluate the effects of any prejudice on the jury." *Id.* (quoting *Barkmeyer*, 949 A.2d at 1007). Moreover, "a trial justice's decision on a motion to pass the case is addressed to the sound discretion of the trial justice, and this Court will not disturb the ruling on such a motion absent an abuse of discretion." *State v. Rosado*, 139 A.3d 419, 423 (R.I. 2016) (quoting *State v. Tully*, 110 A.3d 1181, 1190-91 (R.I. 2015)).

**Discussion**

The defendant argues to this Court that the trial justice erred in refusing to pass the case because, even though her statement was stricken, the jury still heard Dr. Kissoon's statement "[t]hat [Megan's] disclosure was consistent with sexual abuse." A trial justice should pass the case if the challenged testimony inflames the passions of the jury and is "so flagrantly impermissible that even a precautionary instruction would have been insufficient to dispel the prejudice in the jurors' minds and to assure defendant a fair and impartial trial." *State v. Ordway*, 619 A.2d 819, 826 (R.I. 1992) (quoting *State v. Collazo*, 446 A.2d 1006, 1010 (R.I. 1982)).

In the case at bar, after the trial justice granted defendant the relief he requested and struck the potentially prejudicial testimony of Dr. Kissoon, defendant then moved for a mistrial on other grounds. The motion to pass the case was based on the remainder of Dr. Kissoon's testimony because, defendant argued, he did not "see the probative value, if any, * * * of the

other things she had to say[,]" and he claimed that "the only corroboration of the victim's testimony in this case comes from the now stricken answer of the * * * [d]octor." The trial justice correctly relied on G.L. 1956 § 11-37-11[5] and stated that "the testimony standing alone of the victim, if it constitutes proof beyond a reasonable doubt, is sufficient to support conviction without any corroborative or confirmatory evidence." This Court has explicitly eliminated any requirement of independent corroboration for sex-offense cases because the corroboration requirement "arbitrarily singles out victims of sex offenses as a class whose credibility is immediately suspect. By its adoption of [§] 11-37-11, the General Assembly has rejected this concept as a discredited anachronism * * *." *State v. Cabral*, 122 R.I. 623, 628, 410 A.2d 438, 441 (1980).

Moreover, "[a] trial justice's ruling on the admissibility of an expert witness's proffered testimony 'will be sustained provided the discretion has been soundly and judicially exercised * * *.'" *Owens v. Silvia*, 838 A.2d 881, 890 (R.I. 2003) (quoting *Morra v. Harrop*, 791 A.2d 472, 476-77 (R.I. 2002)). Whether or not expert testimony possesses probative value is a question for the jury, and "the jury is free to accept or to reject it, or to accord to the expert's testimony any probative value it deems appropriate." *State v. Benton*, 413 A.2d 104, 112 (R.I. 1980). In the instant case, the trial justice properly admitted the remainder of Dr. Kissoon's testimony, determining that it was both relevant and not prejudicial to defendant. The amount of probative value to accord to Dr. Kissoon's testimony was within the exclusive purview of the jury, and thus defendant's argument that the trial justice erred in refusing to pass the case because her testimony did not have probative value is of no moment.

---

[5] General Laws 1956 § 11-37-11, entitled "Corroboration of victim's testimony unnecessary[,]" provides: "The testimony of the victim need not be corroborated in prosecutions under this chapter."

Based on our careful review of the record, we are satisfied that the trial justice appropriately denied defendant's motion to pass the case. Accordingly, we hold that the trial justice did not abuse her discretion in refusing to pass the case.

**Motion for a New Trial Based on Newly Discovered Evidence**

**Standard of Review**

A motion for a new trial based on newly discovered evidence "should not be granted unless the evidence produced to support the motion satisfies a two-part, multifaceted test." *State v. DiPetrillo*, 922 A.2d 124, 138 (R.I. 2007); *see State v. Firth*, 708 A.2d 526, 532 (R.I. 1998). The first prong of the two-part test involves a "four-part inquiry that requires that the evidence be (1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, (4) of the type which would probably change the verdict at trial." *Id.* (quoting *Firth*, 708 A.2d at 532). "Once this first prong is satisfied, the second prong calls for the hearing justice to determine if the evidence presented is credible enough to warrant a new trial." *Id.* at 138-39 (quoting *Firth*, 708 A.2d at 532).

**Discussion**

The defendant argues that a new trial was warranted based on what he submits was newly discovered evidence that, after the trial had concluded, Michele filed a police report against Gary in which she stated that Gary was "extremely violent towards [her] when [they] were together including breaking [her] jaw a few years ago." The defendant avers that this discord in Michele and Gary's relationship could serve to explain Megan's concerning behavior and self-harm, as opposed to sexual abuse by defendant.

- 12 -

Turning to the first prong set forth by this Court in *Firth*, the police report was not discoverable during or prior to trial because it did not exist—defendant was found guilty on June 24, 2015, and the police report was not filed until October 7, 2015. *See Firth*, 708 A.2d at 532. Nonetheless, we are not convinced that evidence of violence in Gary and Michele's relationship was not discoverable prior to trial with the exercise of due diligence. Both Michele and Gary testified in this case and disclosed that the relationship had broken down by the time of trial; defendant could have explored this further through the exercise of due diligence. A thorough cross-examination of both witnesses could have elicited testimony consistent with physical violence as alleged in the police report.

Furthermore, the trial justice determined, and we agree, that evidence of a tumultuous relationship between Gary and Michele, if admitted, would be "merely impeaching" of the testimony by Michele and Gary, and that it would not have impacted the verdict. Specifically, if admitted, this new evidence could impeach the testimony that Megan had a pleasant home life. However, the connection between the newly discovered evidence of the police report and whether or not the defendant sexually abused Megan as a young child is so far attenuated to the issues before the jury as to have no impact on the verdict in this case. We conclude that the defendant has failed to satisfy the four-part inquiry set forth in the first prong under *Firth*; therefore, we need not address the second prong, which asks "if the evidence presented is credible enough to warrant a new trial." *DiPetrillo*, 922 A.2d at 139 (quoting *Firth*, 708 A.2d at 532). Accordingly, we hold that the trial justice was correct in denying the defendant's motion for a new trial based on newly discovered evidence.

**Conclusion**

For the reasons set forth herein, we uphold the Superior Court's denial of the defendant's motion to strike Dr. Kissoon's testimony in its entirety, the defendant's motion to pass the case, and the defendant's motion for a new trial based on newly discovered evidence. We affirm the judgment of conviction. The papers may be remanded to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Joshua Rathbun. |
| **Case Number** | SU-2017-173-C.A.<br>(W1/13-151A) |
| **Date Opinion Filed** | May 18, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Melanie Wilk Thunberg |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General<br><br>For Defendant:<br><br>Susan B. Iannitelli, Esq. |